OPINION
{¶ 1} Appellant, David Harrison Biro ("Mr. Biro"), in Case No. 2006-L-068, appeals from a judgment of the Lake County Court of Common Pleas, Domestic Relations Division, in which the trial court granted appellee, Linda Biro (now known as "Ms. Tsuda") a divorce, divided the parties' property and debts, and awarded spousal support. In Case No. 2006-L-236, appellant appeals from a judgment of the Lake County Court of Common Pleas, Domestic Relations Division, that denied his motion for relief from judgment. *Page 2 
 {¶ 2} Statement of Facts and Procedural History
 {¶ 3} David Biro and Linda Tsuda were married on February 14, 1987. No children were born of this marriage, but Mr. Biro had three children from a previous marriage. On December 19, 2003, in Case No. 2006-L-068, Ms. Tsuda filed her complaint for a divorce on the grounds of incompatibility. Mr. Biro filed an answer and counterclaim for divorce.
 {¶ 4} Subsequently, the court granted Ms. Tsuda's motion for pendent lite spousal support and ordered Mr. Biro to pay her, effective May 1, 2004, $1,000 per month for spousal support and to pay the mortgagee the monthly mortgage payment of $1,475 per month. The marital home was later sold.
 {¶ 5} Trial was originally set for September 14, 2005. On August 30, 2005, Mr. Biro filed a motion for continuance on the ground that he was injured in an assault and stated that he was unable to testify. On September 9, 2004, Ms. Tsuda also filed a motion for continuance, seeking additional time to depose Mr. Biro, whom she said had made himself previously unavailable for deposition. The trial date was continued until November 3, 2004.
 {¶ 6} On October 27, 2004, Mr. Biro filed his witness and exhibit list. He also filed a motion in limine to preclude Ms. Tsuda from introducing the report or testimony of her financial expert, Keith W. Martinet ("Keith Martinet or Mr. Martinet") on the ground that the report, which had not yet been received, was untimely. On October 29, 2004, Ms. Tsuda filed her witness and exhibit list, which listed Mr. Martinet as one of her witnesses. She also filed a brief in opposition to Mr. Biro's motion in limine along with a motion for continuance. Ms. Tsuda stated that the delay in producing the expert was *Page 3 
caused by the untimeliness of Mr. Biro providing her with requested information. Nevertheless, in order to avoid any claims of injustice she asked for a continuance of the trial, which the court denied.
 {¶ 7} Trial commenced on November 3, 2004, and continued on November 4 and November 15, 2004. The magistrate issued findings of fact and conclusions of law on March 31, 2005. Mr. Biro filed objections and later supplemental objections to the magistrate's decision, which Ms. Tsuda opposed. The trial court overruled the objections and adopted the magistrate's opinion.
 {¶ 8} Mr. Biro filed a timely appeal on April 21, 2006. One day prior to filing the appeal, Mr. Biro filed a Civ.R. 60(B) motion for relief from judgment and subsequently, on July 13, 2006, filed an amended motion for relieff from judgment. We remanded the case to the trial court to rule on this motion. The trial court denied Mr. Biro's motion for relief from judgment. Mr. Biro timely appealed that decision in Case No. 2006-L-236 which we consolidated with Case No. 2006-L-068.
 {¶ 9} In Case No., 2006-L-068, Mr. Biro filed a timely appeal, raising the following five assignments of error:
 {¶ 10} "[1.] The trial court committed reversible error in denying Appellant's motion in limine and not excluding Appellee's expert testimony.
 {¶ 11} "[2.] The trial court committed reversible in allowing Appellee's witness qualified as an expert, in allowing that witness to testify; and in relying upon his testimony.
 {¶ 12} "[3.] The trial court committed reversible error by awarding Appellee more than half of the marital estate. *Page 4 
 {¶ 13} "[4.] The trial court committed reversible error in dividing the marital property and by not categorizing the children's [sic] loans to be marital debt.
 {¶ 14} "[5.] The trial court committed reversible error when it failed to divide Appellant's IRA through a qualified domestic relations order and instead order a distributive award of Appellant's separate property without making the findings required by R.C. sec. 3105.171(E)."
 {¶ 15} Admissibility of Expert Testimony
 {¶ 16} In his first and second assignments of error, Mr. Biro challenges the trial court's denial of his motion in limine, which allowed Keith Martinet to testify as an expert witness regarding the valuation of the family-owned business. Mr. Biro contends that Mr. Martinet's testimony should have been excluded because Ms. Tsuda failed to timely identify him as an expert witness and failed to provide him with an expert report in a timely fashion, in violation of applicable statutory and local rules. Mr. Biro further contends that Mr. Martinet did not properly qualify as an expert witness.
 {¶ 17} Untimeliness of Expert Report and Denial of Motion inLimine
 {¶ 18} At the outset, we note that "[a] motion in limine is tentative and precautionary in nature, reflecting the court's anticipatory treatment of an evidentiary issue at trial." State v. Williams, 11th Dist. No. 2005-L-213 and 2005-L-214, 2007-Ohio-212, at ¶ 17, citingDefiance v. Kretz (1991), 60 Ohio St.3d 1, 4. Thus, "[t]he denial of a motion in limine is within the sound discretion of the trial court."State v. Werfl, 11th Dist. Nos. 2002-L-101 and 2002-L-102,2003-Ohio-6958, at ¶ 64, citing In re Funk, 11th Dist. Nos. 2002-P-0035 and 2002-P-0036, 2002-Ohio-4958, at ¶ 20. Accordingly, we shall not disturb the trial court's ruling save an abuse of discretion. Id. An abuse of *Page 5 
discretion connotes more than a mere error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable." Williams at ¶ 17, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 19} In arguing that the trial court should have granted his motion in limine, Mr. Biro relies on R.C. § 2317.36 and R.C. § 2317.38, which provide that the party offering an expert report must notify the adverse party a "reasonable time before trial of his intention to offer it, together with a copy of the report" in order for the report to be admissible. He also relies on the Lake County Local Rules regarding the timely exchange of medical reports.[1] Specifically, Lake County Local R. V(A)(3) provides:
 {¶ 20} "Any expert witness report whose report is not so provided [prior to the pretrial] may be excluded from testifying at trial, and any documentary or physical evidence which has not been exchanged in accordance with this rule may likewise be excluded from evidence, inaccordance with the Court's discretion. Evidence or other testimony which is discovered on the eve of trial shall not be admissible unless the moving party can justify the failure to discover the information during the time designated for discovery." (Emphasis added.)
 {¶ 21} As written, Lake County Local R. V(A)(3) affords the trial court full discretion to determine whether to admit or exclude an expert report or expert testimony that is not provided to the adverse party in a timely manner. The rule is couched in permissive language, which, in effect recognizes that there may be circumstances where the admission of such evidence is permissible. Although we recognize that a trial court may exclude expert testimony if a party fails to identify an expert witness when requested in an interrogatory or if he or she fails to timely notify the other party of his or *Page 6 
her intention to call an expert witness in accordance with local rules and have so held (See Buck v. Auto Shop M.D., Inc., 11th Dist. No. 2002-P-0123, 2003-Ohio-6959, at ¶ 25), this does not mean that exclusion of an expert's report or testimony is per se required.
 {¶ 22} The inherent purpose of local rules that provide for the timely exchange of expert reports and timely identification of expert witnesses is to avoid unfair surprise at trial and to ensure that the adverse party has a reasonable opportunity to respond to the expert testimony. However, a trial court does not abuse its discretion in admitting such testimony where the opposing party is not prejudiced. See, e.g.,Wright v. Wright (Sept. 13, 2001), 8th Dist. No. 78275, 2001 Ohio App. LEXIS 4066, at 10-11, where the expert report was faxed to opposing counsel just hours before trial but where counsel was aware of the expert and the substance of the testimony.
 {¶ 23} In this case, Mr. Biro's suggestion that the submission of the expert report fell outside of discovery deadlines is unpersuasive. Discovery was ongoing until the time of trial. In fact, Ms. Tsuda had attempted on several occasions to depose Mr. Biro, but, due to his alleged physical and mental infirmities, Mr. Biro did not make himself available for deposition until a week prior to trial. In addition, the record reflects that some documents that had been requested of him were not produced by Mr. Biro until the morning of trial. As the trial court noted: "it was [Mr. Biro's] own repeated delays in producing documents which prevented Keith Martinet from issuing his report earlier." Moreover, the court did not set a case management schedule with an expert witness cut-off date. Thus, there was no violation of a discovery cut-off by Ms. Tsuda. *Page 7 
 {¶ 24} Although it may have been preferable for Ms. Tsuda to have identified Mr. Martinet as an expert and to have provided Mr. Biro with his report at an earlier junction, we are unwilling to substitute our judgment with that of the trial court and to find that the denial of the motion in limine was an abuse of discretion. The record demonstrates that the magistrate delayed the testimony of Mr. Martinet until the following day to accommodate defense counsel's request for additional time to prepare his cross-examination of the witness. The magistrate repeatedly told counsel that if he needed more time for later questioning, even a month later, the court would allow for that to happen. The following colloquy took place between the court and counsel:
 {¶ 25} "THE MAGISTRATE: What I am going to do with that [motion in limine]. I am going to deny the motion, but if necessary, on behalf of Mr. Biro, you would be given an opportunity to come back in the future, if necessary, in the near future, Mr. Heutsche, to recall or present other evidence to attack the credibility or to rebut the testimony of Mr. Martinet. * * * I think the best way to handle it is to let you [Mr. Heutsche] cross-examine him today or tomorrow, and then if you need to call him back to cross-examine him again * * * and what I would be talking about is coming back before the end of the month."
 {¶ 26} After making that ruling, defense counsel objected and asked if, at the least, the witness could be called the next day so that he would have additional time to prepare for cross-examination. The court granted this request. The trial court's actions do not constitute an abuse of discretion particularly since the court provided defense counsel with the opportunity to come back at a later date and delayed the cross-examination of the expert until the following day. Defense counsel had the opportunity *Page 8 
for further cross-examination, but chose not to recall the witness. Moreover, the record reveals that defense counsel conducted an extensive cross-examination of this witness.
 {¶ 27} Qualifications of Expert
 {¶ 28} Appellant also challenges the qualifications of Mr. Martinet to testify as an expert witness. A trial court's ruling as to the admission or exclusion of expert testimony is within its broad discretion and will not be disturbed absent an abuse of discretion. State v. Armstrong, 11th Dist. Nos. 2001-T-0120 and 2002-T-0071, 2004-Ohio-5635, at ¶ 52, citingState v. Tomlin (1992), 63 Ohio St.3d 724, 728. Evid.R. 702 governs the admissibility of expert testimony. It provides:
 {¶ 29} "A witness may testify as an expert if all of the following apply:
 {¶ 30} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 31} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 32} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *"
 {¶ 33} Mr. Martinet's testimony established his qualifications as an expert capable of giving an opinion on the valuation of the family-held business. Mr. Martinet had nineteen years experience advising and valuing closely-held businesses and corporations. Thus, as a certified public accountant and certified valuation analyst who has conducted seventy-five business valuations, sixty-five of which have been relative to divorce proceedings, and who has been previously accepted as an expert in Ohio *Page 9 
courts, Mr. Martinet clearly possesses specialized knowledge not possessed by lay persons and meets the requirements of Evid.R. 702(A) and (B). At issue is whether he satisfies the reliability prong of Evid.R. 702(C).
 {¶ 34} The Supreme Court of Ohio in Miller v. Bike Athletic Co.
(1998), 80 Ohio St.3d 607, 611, held that in determining whether expert testimony is reliable, the focus must be on whether the principles and methods used to reach an opinion are reliable, not whether the conclusions are correct. See, also, Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579, 592-593. The "ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's `technique or principle [is] sufficiently reliable so that it will aid [the trier of fact] in reaching accurate results.'" Armstrong at ¶ 63.
 {¶ 35} Mr. Biro contends that Mr. Martinet, in valuing Biro Sales, Inc. and his interest in the stock of the company, did not follow standard evaluation protocol for business valuations and based his opinion on incorrect assumptions. In particular, Mr. Biro argues that Mr. Martinet did not review any company records; that he contradicted himself in his opinions; and that he did not comply with IRS Rule 59-60, which he claims requires a valuation be based on five years of data for averaging.
 {¶ 36} The magistrate rejected these arguments, noting that Mr. Martinet utilized financial data from 2001-2004 and used the capitalization of excess earnings-return on assets method of valuation, which the magistrate found to be "the best method of valuing this type of business." The magistrate then concluded that:
 {¶ 37} "There is nothing in the record which indicates Mr. Martinet did not utilize accepted procedures applied consistent with the specific information related to Biro *Page 10 
Sales, Inc. It is concluded using three years of actual data and one year of projected data, although not in strict compliance with the suggestions of Revenue Ruling 59-60 to utilize five years for averaging, would result in a minimal deviation in value in this matter." The trial court, in overruling Mr. Biro's objections on this issue, agreed with this rationale and also pointed out that Mr. Biro failed to provide all company documents requested. Thus, Mr. Biro's "own acts and/or omissions contributed to the four year averaging of this closely held family business, rather than a five year average."
 {¶ 38} We find no abuse of discretion in the court's reliance on the expert valuation of Mr. Martinet. The record demonstrates that Mr. Martinet considered all financial data available to him, including the relevant financial statements (company records and tax records); learned about the company by meeting with Biro Sales president, Mark Biro; and researched the industry and economy to determine what impact it had on the business.
 {¶ 39} Mr. Biro also contends that Mr. Martinet contradicted himself by first stating that his valuation was based on what a willing buyer would pay a willing seller but later stating that he assumes Ms. Tsuda is not a willing seller and that he would not recommend that Ms. Biro buy out his interest. Mr. Biro takes this testimony out of context. Furthermore, this so-called "inconsistency" does not affect the admissibility of his expert opinion. In fact, "[a]ny weaknesses in the factual underpinnings of expert testimony goes to the weight and or credibility of the testimony, rather than its admissibility."Seminatore v. Climaco, Climaco, Lefkowitz Garofoli Co., L.P.A. (Dec. 7, 2000), 8th Dist. No. 76658, 2000 Ohio App. LEXIS 5732, at 32. *Page 11 
 {¶ 40} The fact that Mr. Martinet used a four year average rather than a five year average under the IRS rule is not fatal to his valuation. He testified that in performing his evaluation, he complied with all the required steps based upon the standards set forth by the National Association of Certified Valuation Analysts. He also testified that his report was still valid based upon the four-year averaging method used. Mr. Biro could have chosen his own expert to render an opinion regarding valuation, but did not. Defense counsel cross-examined Mr. Martinet to cast doubts on his credibility. Again, any matters regarding his credibility were for the trier of fact to decide. Moreover, "[t]o qualify as an expert, the witness need not be the best witness on the subject." Seminatore at 32-33, citing Alexander v. Mt. Carmel Med.Ctr. (1978), 56 Ohio St. 2d 155, 159. We find no abuse of discretion in the court allowing Mr. Martinet to offer his expert opinion.
 {¶ 41} Accordingly, we overrule appellant's first and second assignments of error.
 {¶ 42} Division of Property
 {¶ 43} In his third assignment of error, Mr. Biro argues that the trial court erred in making its property division.
 {¶ 44} The trial court's distribution of marital property will not be disturbed absent an abuse of discretion. An abuse of discretion connotes more than a mere error of law or judgment; rather it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable.Measor v. Measor, 160 Ohio App.3d 60, 2005-Ohio-1417, at ¶ 9, citingBooth v. Booth (1989), 44 Ohio St.3d 142, 144; Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. *Page 12 
 {¶ 45} The trial court used the period of time from the date of marriage to the date of trial (February 14, 1987 to November 3, 2004) for valuation purposes with respect to marital assets and marital debt. After determining which assets were marital property and assigning a value to those assets, the trial court distributed the marital property as follows:
 {¶ 46} HUSBAND
 {¶ 47} Marital Interest in Biro Sales, Inc. $68,355.00
 {¶ 48} Interest in 4303 Detroit Co. $16,250.00
 {¶ 49} U.S. Bank Account $ 2,339.00
 {¶ 50} HR Block investment account (ex. 40) $ 1,530.00
 {¶ 51} Biro Sales Simple IRA $33,391.00
 {¶ 52} IRA (ex. 43) $ 3,962.00
 {¶ 53} Northcoast Investment account $ 5,154.00
 {¶ 54} Preliminary disbursement from Rutland Drive sale $ 5,000
 {¶ 55} Distribution of remaining marital interest in $ 850.00 Rutland Drive Sale
 {¶ 56} TOTAL: $72,484.00
 {¶ 57} WIFE
 {¶ 58} 2003 Federal and State Income Tax refunds $ 5,175.00
 {¶ 59} IRA $ 1,090.00
 {¶ 60} Preliminary disbursement from Rutland Drive sale $ 5,000
 {¶ 61} Distribution of remaining marital interest in $ 850.00 Rutland Drive Sale
 {¶ 62} TOTAL: $12,115.00
 {¶ 63} The trial court then concluded that Ms. Tsuda would retain as her separate property her wedding ring and other jewelry, her Key Bank checking account ($180.00) and Key express checking account ($2,537.00). Mr. Biro was awarded the following items as his separate property: proceeds from the sale of the Rutland Drive residence ($68,396.00) and IRA ($4,088.00), totaling $72,484.00.
 {¶ 64} The court also concluded that the following were marital debts:
 {¶ 65} Mr. Biro's National City Bank credit card $ 1,591.00 *Page 13 
 {¶ 66} Mr. Biro's Bank One Visa $ 6,094
 {¶ 67} Mr. Biro's Chase Bank Visa $ 16,139.00
 {¶ 68} TOTAL: $ 23,824.00
 {¶ 69} Ms. Tsuda's Chase Visa $ 6,430.00
 {¶ 70} Ms. Tsuda's student loan $ 6,625.00
 {¶ 71} Ms. Tsuda's loan from sister $ 500.00
 {¶ 72} TOTAL: $ 13,555.00
 {¶ 73} Mr. Biro's three children took out student loans, for which Mr. Biro co-signed, to fund their college expenses. The children testified that it was their intention to re-pay these loans themselves. The court concluded that the educational loans were not marital debts.
 {¶ 74} The trial court ordered Mr. Biro to pay to Ms. Tsuda $67,231, the amount held in escrow from the sale of the Rutland Drive residence "to equalize marital property and debt." The court also ordered Mr. Biro to use funds from his 2004 bonus that was being held by Biro Sales to pay $23,824 of the marital debt, the amount of marital debt he incurred. The remaining balance of the bonus ($1,909) was distributed to Ms. Tsuda.
 {¶ 75} The court ordered Mr. Biro to pay Ms. Tsuda spousal support in the amount of $1,250 per month for forty-eight months, effective April 1, 2005. The court specifically retained jurisdiction to modify the support award. The court further ordered Mr. Biro to pay Ms. Tsuda's attorney fees ($3,500) and the expert witness fee of Mr. Martinet ($1,851).
 {¶ 76} Mr. Biro objects to certain aspects of this property division.
 {¶ 77} H R Block IRA's
 {¶ 78} Mr. Biro contends that the trial court committed a mathematical error by double counting his HR Block IRA and by awarding Ms. Biro $1,530 that she is not *Page 14 
entitled to. Essentially, he argues that Exhibits 40 and 43 refer to the same H R Block IRA account and should not have been counted twice.
 {¶ 79} We reject this argument. The record demonstrates that these exhibits evidence two different IRA's with two different account numbers. The account number for Exhibit 40 is * * * 8728, with a balance $1,530. The account number for Exhibit 43 was identified as * * * 8639, with an account balance of $3,962.80. When identifying Exhibit 43, Mr. Biro advised the court that Exhibits 42 and 43 referred to the same account. He never stated that Exhibits 40 and 43 were the same, as he now claims.
 {¶ 80} Checking Accounts
 {¶ 81} Mr. Biro objects to the trial court's determination that his checking account valued at $2,339 was marital property but that Ms. Tsuda's checking accounts were deemed her separate property.
 {¶ 82} R.C. 3105.171(A)(3)(a)(i) defines "marital property" as "all real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage [.]" Property that is "acquired during marriage is presumed to be marital unless it can be shown to be separate."Sedivy v. Sedivy, 11th Dist. Nos. 2006-G-2687 and 2006-G-2702,2007-Ohio-2313, at ¶ 21, citing McLeod v. McLeod, 11th Dist. No. 2000-L-197, 2002-Ohio-3710, at ¶ 16; Frederick v. Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 Ohio App. LEXIS 1458, at 6.
 {¶ 83} Marital property does not include separate property. R.C.3105.171(A)(3)(b). "Separate property" is defined in R.C. 3105.171
(A)(6)(a)(ii) as "[a]ny *Page 15 
real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."
 {¶ 84} "A `trial court's characterization of property * * * is a question of fact, thus a reviewing court must apply a manifest weight of the evidence standard of review to the trial court's characterization.'"O'Grady v. O'Grady, 11th Dist. No. 2003-T-0001, 2004-Ohio-3504, at ¶ 49, citing Humphrey v. Humphrey, 11th Dist. No. 2000-A-0092, 2002-Ohio-3121, at ¶ 16. In deciding whether a trial court's characterization of property is against the manifest weight of the evidence, we "must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the trial court clearly `lost its way and created such a manifest injustice that the [judgment] must be reversed and a new trial ordered.'" O'Grady at ¶ 49, citing Boggins v.Boggins, 9th Dist. No. 3246-M, 2002-Ohio-3183, at ¶ 7.
 {¶ 85} The evidence reveals that Ms. Tsuda opened both checking accounts prior to the date of trial (in November 2003 and July 2004). Ordinarily, "property acquired during the marriage is presumed to be marital property." O'Grady at ¶ 48. However, in this case, Ms. Tsuda testified that these checking accounts were funded with money she received from social security disability payments she received and from the interim support payments Mr. Biro had made to her. In Janosek v.Janosek, 8th Dist. Nos. 86771 and 86777, 2007-Ohio-68, at ¶ 98, the Eighth District recently held that spousal support payments constitute non-marital funds. Under these circumstances, we find that the trial court did not err in designating these accounts as Ms. Tsuda's separate property, as this conclusion was supported by competent, credible evidence. *Page 16 
 {¶ 86} 2003 Bonus
 {¶ 87} Mr. Biro next argues that the trial court did not determine the nature of his escrowed 2003 bonus, which was awarded to him after the parties separated, and that the court should have found that the bonus was his separate property.
 {¶ 88} Contrary to Mr. Biro's assertion, the trial court did determine the nature of the 2003 bonus. It specifically found that Mr. Biro's 2003 bonus of $25,753 was marital property. The fact that the bonus was earned after the date of separation is immaterial since the court chose the date of the final hearing (November 3, 2004) as the termination of marriage date for valuation and distribution purposes. Typically, courts choose the date of the final hearing as the date on which the marriage is said to have terminated, although they do have the discretion to choose a de facto date if equity so dictates. Dunn v. Dunn, 11th Dist. No. 05-CA-104, 2006-Ohio-4649, at ¶ 21. In this case, no argument was made to use a different date as the termination date of the marriage. The trial court was therefore justified in choosing the date of final hearing as the termination date of the marriage for purposes of property division. Id.; see, also, Nitschke v. Nitschke, 11th Dist. No. 2006-L-198, 2007-Ohio-1550, at ¶ 26, citing R.C. 3105.171(A)(2)(a) and (b); Marini v. Marini, 11th Dist. Nos. 2005-T-0012 and 2005-T-0059,2006-Ohio-3775, at ¶ 11. Since there was evidence showing that the bonus was income earned during the marriage, the court was also warranted in finding that it was a marital asset.
 {¶ 89} Appellant's third assignment of error is overruled. *Page 17 
 {¶ 90} Marital Debt
 {¶ 91} In his fourth assignment of error, Mr. Biro contends that the trial court incorrectly determined that the amount of marital debt was $37,379; that it failed to include within the amount of the debt his children's student loans to which he was a cosigner; that it inappropriately ordered him to use $23,824 of his bonus to pay his credit card debt; and that it ordered him to transfer most of his interest in the marital home ($67,231) to Ms. Tsuda to pay, in part, her marital debt.
 {¶ 92} Again, we note that the trial court enjoys broad discretion in dividing marital property. In allocating marital property, the trial court must consider the parties' assets and liabilities; thus, an equitable division of marital property implies an equitable division of marital debt. R.C. 3105.171(F)(2); Ross v. Ross, 4th Dist. No. 05CA2823,2005-Ohio-5405, at ¶ 16. The trial court therefore has the discretion to equitably divide marital property, including marital debt. Rice v.Rice, 11th Dist Nos. 2006-G-2716, 2006-G-2717, 2007-Ohio-2056, at ¶ 40, citing, Longo v. Longo, 11th Dist. No. 2004-G-2556, 2005-Ohio-2069, at ¶ 109. We will not reverse a trial court's allocation of marital debt absent an abuse of discretion. Id.
 {¶ 93} The trial court correctly determined that the amount of the marital debt was $37,379; Mr. Biro's debt was $23,824 and Ms. Tsuda's debt was $13,555. The court was not required to order each party to pay their own debt and equalize the property division as Mr. Biro suggests. Given the fact that Mr. Biro had a greater share of the liquid assets and had incurred a greater share of the marital debt, the trial court acted within its discretion in ordering Mr. Biro to use most of his bonus to pay the debt he had incurred. *Page 18 
 {¶ 94} It was also within the court's discretion to order Mr. Biro to pay Ms. Tsuda $67,231 from the proceeds from the sale of the marital home. The court initially determined that the full $68,396 from the sale of the marital home was Mr. Biro's separate property. However, the court then ordered Mr. Biro to "pay from the proceeds in escrow from the sale of the Rutland Drive residence $67,231.00 to equalize marital propertyand debt." (Emphasis added.) R.C. 3105.171(E)(2) specifically provides that a court may make a distributive award "in lieu of a division of marital property in order to achieve equity between the spouses * * *." A distributive award "represents any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support." Osborn v. Osborn, 11th Dist. No. 2003-T-0111, 2004-Ohio-6476, at ¶ 50, citing R.C. 3105.171(A)(1).
 {¶ 95} Prior to making the distributive award, Ms. Tsuda's share of the marital assets was originally $12,115 compared to Mr. Biro's share at $136,831. The amount Ms. Tsuda ultimately received from the sale of the Rutland Drive home was an offset of monies needed to provide an equitable distribution of the marital estate. The court did not abuse its discretion in making this award and adequately explained the reason why it did so.
 {¶ 96} Moreover, the trial court's decision as to whether Mr. Biro's children's college loans constituted marital debt was a factual question. Thus, the court's finding that the loans were not a marital debt was within the court's discretion and was supported by the evidence. Specifically, the evidence revealed that each of the three *Page 19 
children signed the loans with their father and intended to pay off the loans themselves. Ms. Tsuda testified that she was not a co-signer to these documents. As the trial court noted, the fact that Ms. Tsuda wanted her step-children to attend college is not tantamount to her becoming a financial guarantor of the college loans along with Mr. Biro. Furthermore, Mr. Biro's reliance on Riddel v. Riddel (July 21, 1987), 10th Dist. No. 86AP-689, 1987 Ohio App. LEXIS 8044, for the proposition that the parties should have shared in the repayment of the college loans is without merit. In Riddel, there was absolutely no discussion regarding the allocation of the college debt, other than one sentence where the court ordered: "Children to pay own Student loans. Any balance unpaid to be paid by Plaintiff and Defendant equally." Id. at 2. In this case, however, the evidence supports the trial court's conclusion that these loans were not marital debts.
 {¶ 97} We overrule appellant's fourth assignment of error.
 {¶ 98} Failure to Distribute IRA Through QDRO
 {¶ 99} In his fifth assignment of error, Mr. Biro argues that the trial court should have divided his IRA through a QDRO. However, Mr. Biro failed to object to this issue when he filed his objections and supplemental objections to the magistrate's decision, and therefore has waived this issue on appeal. Schriefer v. Schriefer, 11th Dist. No. 2003-L-040, 2004-Ohio-2206, at ¶ 5.
 {¶ 100} "Civ.R. 53(E) imposes an obligation upon a party to make timely, specific objections in writing to the trial court, identifying any error of fact or law in the magistrate's decision. Therefore, `* * * a party is barred from raising any error on appeal pertaining to a trial court's adoption of any finding of fact or conclusion of law by a *Page 20 
magistrate unless that party timely objected to that finding or conclusion as required under the rule.'" Id. at ¶ 8, citing Howard v.Norman's Auto Sales, 10th Dist. No. 02AP-1001, 2003-Ohio-2834, at ¶ 21.
 {¶ 101} Because Mr. Biro failed to object to this issue, this argument is not properly before us. However, even if it was, his argument still lacks merit. The use of a QDRO was not necessary because each party retained their full interest in their own IRA's.
 {¶ 102} Appellant's fifth assignment of error lacks merit.
 {¶ 103} In Case No. 2006-L-236, Mr. Biro, appellant raises two assignments of error:
 {¶ 104} "[1.] The trial court erred to the prejudice of Appellant, when it sua sponte, issued an order dismissing Appellant's motions for relief from judgment and Appellant's amended and supplemental motion for relief from judgment.
 {¶ 105} "[2.] The trial court erred to the prejudice of Appellant, when it, sua sponte, precluded the Appellant from introducing of [sic] evidence regarding Appellee's employment and the issue of Appellant's liability regarding the children's educational loans."
 {¶ 106} In essence, Mr. Biro challenges the denial of his Civ.R. 60(B) motion for relief from judgment. He maintains that the trial court treated his motion like a motion in limine and that he was entitled to have an evidentiary hearing where he could introduce new evidence. We reject these contentions.
 {¶ 107} At the outset, we note that in reviewing a Civ.R. 60(B) determination, we do so under an abuse of discretion standard. Stone v.Stone, 11th Dist. No. 2005-P- *Page 21 
0072, 2006-Ohio-3420, at ¶ 29. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. Measorat ¶ 9, citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144, andBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 108} "In order to prevail on a Civ.R. 60(B) motion for relief from judgment, the movant must establish that `(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time * * *.'" Stone at ¶ 29, citing State ex rel. Russo v. Deters (1997),80 Ohio St.3d 152, 153-154.
 {¶ 109} Mr. Biro based his motion for relief from judgment on Civ.R. 60(B)(2) (newly discovered evidence) and 60(B)(4) (that it is no longer equitable that the judgment have prospective application). Mr. Biro sought to show that the college educational loans were in default and should thus be considered marital debt. He also attempted to argue that because Ms. Tsuda became employed, his spousal support obligations should terminate.
 {¶ 110} In order to be granted relief under Civ.R. 60(B)(2), "the moving party must demonstrate that: (1) the evidence was actually `newly discovered', that is, it must have been discovered subsequent to trial; (2) the movant exercised due diligence; and (3) the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result." Cominsky v. Malner, 11th Dist. No. 2002-L-103, 2004-Ohio-2202, at ¶ 20, citing Holden v. Bureauof Motor Vehicles (1990), 67 Ohio App.3d 531. *Page 22 
 {¶ 111} Moreover, the "it is no longer equitable clause" under Civ.R.60(B)(4) "was designed to provide relief to those who have been prospectively subjected to circumstances which they had no opportunityto foresee or control." Cuyahoga Support Enforcement Agency v.Guthrie (1999), 84 Ohio St.3d 437, 443, citing Knapp v. Knapp (1986),24 Ohio St.3d 141, paragraph one of the syllabus. It "was not meant to offer a party a means to negate a prior finding that the party could have reasonably prevented." Id.
 {¶ 112} Mr. Biro is inappropriately attempting to use Civ.R. 60(B)(2) and(B)(4) to re-litigate and negate the trial court's findings of fact and conclusions of law regarding the educational loans and spousal support. The evidence at trial consistently showed that either Mr. Biro or his children had been making payments on the loans. The evidence also showed that Mr. Biro, not Ms. Tsuda, was a guarantor on the loans; thus, it found the loans were not a marital debt. This fact has not changed. Thus, Mr. Biro cannot prove that a new trial would probably produce a different result.
 {¶ 113} With respect to spousal support, the trial court expressly recognized that Ms. Tsuda was attempting to secure employment and it therefore reserved jurisdiction over the issue of spousal support. We agree with the trial court's conclusion that Mr. Biro "is attempting to litigate spousal support de novo." Under these circumstances, we find that Mr. Biro is free to challenge these issues in a motion to modify spousal support but may not do so under Civ.R. 60(B).
 {¶ 114} Mr. Biro also contends that he was entitled to an evidentiary hearing on his Civ.R. 60(B) motion. We disagree. "A movant is entitled to a hearing on a motion for relief from judgment if `the motion and affidavits contain allegations of operative facts *Page 23 
which would warrant relief under the rule.'" Mamula v. Mamula, 11th Dist. No. 2005-T-0148, 2006-Ohio-4176, at ¶ 26. Since there were no operative facts to warrant relief, the trial court acted within its discretion in overruling his motion without holding an evidentiary hearing.
 {¶ 115} Appellant's first and second assignments of error are overruled.
 {¶ 116} We affirm the decision of the Lake County Court of Common Pleas.
CYNTHIA WESCOTT RICE, P.J., ROBERT A. NADER, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] Mr. Biro cites Lake County Local R. III (v)(A)(3). However, Local R. V(A)(3) is the pertinent section. *Page 1