[Cite as *State ex rel. DeWine v. Deer Lake Mobile Park, Inc.*, 2017-Ohio-1509.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. MICHAEL DEWINE ATTORNEY GENERAL OF OHIO, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellee, | : | **CASE NO. 2016-G-0077** |
| - vs - | : | |
| DEER LAKE MOBILE PARK, INC., et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 11M000168.

Judgment: Affirmed.

*Mike DeWine,* Ohio Attorney General, and *Aaron S. Farmer,* Assistant Attorney General, State Office Tower, 30 East Broad Street, 16th Floor, Columbus, OH 43215-3428 (For Plaintiff-Appellee).

*Matthew J.D. Lynch* and *Patricia McKay,* Lynch & Lynch Co., LPA, 17477 Chillicothe Road, Chagrin Falls, OH 44023 (For Defendants-Appellants).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellants, Deer Lake Mobile Park, Inc.; the Malliski Family Trust; and Mark Malliski, appeal the judgment of the Geauga County Court of Common Pleas denying appellants' Civ.R. 60(B) motion for relief from a prior judgment ordering them to pay a civil penalty to appellee, the state of Ohio ex rel. Michael DeWine, Attorney General, due to their violations of Ohio's Safe Drinking Water Act and Water Pollution

Control Act. This is appellants' third appeal arising from the underlying judgment. At issue is whether the trial court abused its discretion in denying appellants' motion for relief from judgment. For the reasons that follow, we affirm.

{¶2} Eugene and Alice Malliski owned 40 acres of land on Kinsman Road in Burton, Ohio, which they used to operate a 43-unit mobile home park called Deer Lake Mobile Park ("Deer Lake"). In June 2003, Eugene Malliski created the Malliski Family Trust to benefit himself; his wife, Alice; and their son, Mark. Eugene and Alice were co-trustees of the Trust. Since 2003, the Trust has owned Deer Lake and employed Mark as the park's manager. Since the death of Eugene and Alice in 2015, Mark has been the sole trustee of the Trust and the sole owner of Deer Lake.

{¶3} Deer Lake provides drinking water to its residents and has a waste-water treatment plant used to treat sewage from the mobile home park. Mark's responsibilities at Deer Lake include park supervision, managing Deer Lake's budget and records, supervising the day-to-day operations of the park, and overseeing the operation of Deer Lake's drinking water system and waste-water treatment plant.

{¶4} For several years, the Ohio EPA notified the Malliskis of their violations of the Safe Drinking Water Act and the Water Pollution Control Act; explained their environmental requirements to them; and made repeated efforts to obtain their voluntary compliance with these laws, but they refused to cooperate. Thus, on February 9, 2011, the state filed a complaint against Deer Lake, Eugene Malliski and Alice Malliski, individually and as trustees of the Malliski Family Trust, and Mark Malliski for injunctive relief and civil penalties due to their repeated violations of the environmental laws.

2

{¶5} On March 9, 2011, the court conducted a hearing on the state's request for a preliminary injunction to prevent further violations of the Safe Drinking Water Act. After the hearing, the parties entered a consent order for a preliminary injunction in which appellants agreed to perform certain activities required of a public drinking water system. Under the terms of the consent order, appellants agreed to chlorinate their drinking water system; to sample and monitor the drinking water for contaminants; and to hire a certified operator.

{¶6} Two months later, on May 9, 2011, the state filed contempt charges against appellants due to their failure to comply with the consent order. The court held a hearing on the charges. After the hearing, the court issued an order finding that the Malliskis were operating a public drinking water system subject to Ohio EPA regulation and that they were in contempt for failing to chlorinate (disinfect) their drinking water system as required by Ohio law and the consent order. The court imposed a $250 fine on each of the Malliskis and a 30-day jail term, which was stayed as to Eugene and Alice and suspended as to Mark, pending an opportunity to purge by complying with the Safe Drinking Water Act.

{¶7} In October 2012, the court granted the state's motion for partial summary judgment on the issue of liability, finding that appellants committed numerous violations of the Safe Drinking Water Act and the Water Pollution Control Act. The court found Eugene and Alice liable as trustees of the Trust and also found Deer Lake liable. The court also found Eugene, Alice, and Mark personally liable for any damages based on their capacity as owners and operators of the public-water and sewage-disposal

3

systems. The trial court also found that the Malliskis failed to purge their prior contempt by not chlorinating the public water system and fined them each $250.

{¶8} The court scheduled the civil penalty trial for October 2012. Less than a week before trial, the Malliskis moved for a continuance, which the trial court granted, and reset the trial for November 2012. Appellants then appealed the trial court's partial summary judgment, requiring the trial court to cancel the November 2012 civil penalty trial and to stay the proceedings pending the appeal.

{¶9} On February 25, 2013, this court dismissed the appeal for lack of a final appealable order in *State ex rel. DeWine v. Deer Lake Mobile Park, Inc.*, 11th Dist. Geauga No. 2012-G-3119, 2013-Ohio-637 ("*Deer Lake I*").

{¶10} The trial court then scheduled the civil penalty trial for May 16, 2013. The Malliskis thus delayed the trial for seven months, from October 2012 to May 2013. Two weeks before trial, the Malliskis filed another motion to continue the trial, this time for 120 days, citing Eugene and Alice's health issues. Two days before trial, the court entered an order denying the motion. In support, the court found that Mark Malliski had the authority to represent Eugene and Alice's interests and that, in fact, during the course of the proceedings, he had represented their interests in many ways, e.g., by responding to the state's discovery requests on his parents' behalf. Further, the court found that, as to Eugene and Alice, although appellants had an adequate opportunity to seek the appointment of a guardian for them, they made no showing that they were seeking such appointment. Further, the court said it was reluctant to further continue the trial because it had already been pending for many months.

4

{¶11} Again, on the morning of trial, May 16, 2013, the Malliskis' counsel orally moved to continue the trial, arguing Eugene and Alice were ill and unavailable, this time asking for 30 to 60 days to seek the appointment of a guardian for them, but counsel said he could not be sure this amount of time would be sufficient. The court noted that Eugene's and Alice's health issues had been ongoing for a long time, and the court had already provided them with ample opportunity to seek the appointment of a guardian. The court noted that this had been a long proceeding and that the state had established many drinking-water and water-pollution violations, making this a matter of public importance and concern. Thus, the court denied the oral motion to continue the trial, finding the trial should proceed for public policy reasons.

{¶12} Counsel continued to represent Eugene and Alice, but Mark represented himself at trial. Before opening statements, on the state's recommendation, the court dismissed the case against Eugene and Alice in their personal capacity and proceeded to trial against Deer Lake, the Trust, and Mark.

{¶13} The state sought an injunction and a $500,000 civil penalty against appellants due to their violations of the subject environmental laws over many years.

{¶14} On the first day of trial, an employee of the Ohio EPA, Division of Surface Water, authenticated letters the EPA sent appellants between 2010 and 2012, advising them that they were required to apply for and obtain a National Pollution Discharge Elimination Systems ("NPDES") permit for their waste-water treatment plant. However, he said that as of the date of the trial, appellants had not even applied for a permit.

{¶15} Another employee of the Ohio EPA, Division of Surface Water, testified that appellants committed 1,163 days of violations of the surface water laws regulating

5

waste-water treatment plants. From March 10, 2010, through the date of trial, appellants avoided $6,512 in costs by failing to sample for chemicals and failing to hire a certified operator as required.

{¶16} A third employee of the Ohio EPA, Division of Drinking and Groundwater, testified that, despite some 40 notices from the Ohio EPA documenting the Malliskis' drinking-water violations, those violations continued throughout the years, resulting in more than 19,000 days of drinking-water violations. She said that appellants also avoided $5,558 in costs by failing to disinfect the water system, monitor the water for contaminants, and employ a certified operator.

{¶17} On the second day of trial, Mark Malliski failed to appear. Because Mark did not call the court to advise as to his whereabouts or intent to appear, the court proceeded to trial without him. Later that morning, while the parties were presenting closing argument, Mark entered the courtroom and remained for the rest of the trial.

{¶18} On July 18, 2013, the court entered judgment in favor of the state. Prior to trial, appellants had deactivated the park's public drinking water system so the court's injunction dealt only with the waste-water treatment plant. The court ordered appellants to comply with the Water Pollution Control Act and to obtain an NPDES permit. The court found that appellants exposed the public to potentially unsafe drinking water and also discharged sewage into a tributary of the Cuyahoga River. The court found that appellants created a risk of harm to the public; showed open defiance to their environmental obligations; avoided costs and obtained an economic benefit through their noncompliance. The court also found the state incurred extraordinary enforcement costs. Appellants concede that, due to the number of their violations, their maximum

potential civil penalty exceeded $500 million. After finding appellants failed to present any evidence in support of an inability to pay, the court entered judgment against Deer Lake, the Trust, and Mark, jointly and severally, in the amount of $212,000.

{¶19} Appellants appealed the trial court's judgment. This court, in *State ex rel. DeWine v. Deer Lake Mobile Park, Inc.*, 11th Dist. Geauga No. 2013-G-3156, 2015-Ohio-1060 ("*Deer Lake II*"), affirmed the trial court's judgment. Appellants moved for reconsideration of this court's judgment, and this court denied their motion. Subsequently, appellants filed a notice of appeal with the Ohio Supreme Court, but that Court declined jurisdiction and later denied appellants' motion for reconsideration. *State ex rel. DeWine v. Deer Lake Mobile Park, Inc.*, 144 Ohio St.3d 1428, 2015-Ohio-5225 and 144 Ohio St.3d 1508, 2016-Ohio-652.

{¶20} On July 18, 2014, one year after the trial court entered final judgment against appellants, they filed a motion for relief from judgment. The state filed a brief in opposition and the trial court denied the motion. Appellants now appeal the trial court's judgment, asserting two assignments of error. For their first, they allege:

{¶21} "The trial court erred in denying the defendants' Civ.R. 60(B)(1) motion for relief from the July 18, 2013 judgment imposing a $212,000 civil penalty on the defendants for violations of the Safe Drinking Water Act (R.C. Chapter 6109) and the Pollution Control Act (R.C. Chapter 6111) where the trial court refused to grant a continuance or a stay and entered judgment even though the Defendants Eugene Malliski and Alice Malliski are each incapacitated and unable to aid in the defense and where the Defendant Mark Malliski fell ill and was absent from the second day of trial

7

until after the defense rested, so the defendants did not have the opportunity to present evidence in their defense concerning their ability to pay the $212,000 civil penalty."

{¶22} As a preliminary matter, appellants' argument that the amount of the court's civil penalty was excessive is barred by res judicata as it was raised by appellants and overruled by this court in *Deer Lake II* at ¶51.

{¶23} To prevail on a motion brought under Civ.R. 60(B), the moving party must prove that: (1) he has a meritorious defense or claim to present if relief is granted; (2) he is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment was entered. *GTE Automatic Electric v. ARC Industries*, 47 Ohio St.2d 146, 150-151 (1976). The grounds for relief in Civ.R. 60(B), as pertinent here, are "(1) mistake, inadvertence, surprise, or excusable neglect;" and "(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B)," i.e., within 28 days from the entry of final judgment.

{¶24} "A motion filed pursuant to Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of an abuse of discretion." *Hiener v. Moretti*, 11th Dist. Ashtabula No. 2009-A-0001, 2009-Ohio-5060, ¶18. Civ.R. 60(B) has been viewed as a mechanism to strike a balance between the need for finality and the need for "fair * * * decisions based upon full and accurate information." *In re Whitman*, 81 Ohio St.3d 239, 242 (1998).

{¶25} It is well-settled that relief from judgment pursuant to Civ.R. 60(B) is not available as a substitute for an appeal. *Gursky v. Gursky*, 11th Dist. Portage No. 2003-

8

P-0010, 2003-Ohio-5697, ¶19, citing *Blasco v. Mislik*, 69 Ohio St.2d 684, 686 (1982). In *Blasco, supra*, the Supreme Court of Ohio held that where the movant's "contentions merely challenge the correctness of the court's decision on the merits and could have been raised on appeal," they may not be asserted in a motion for relief from judgment. *Id.* The Court further held that by including such contentions in their motion, the defendants disregarded or ignored their obligation under the Civil Rules to timely present their defenses. *Id.*

{¶26} Appellants argue the trial court erred in denying their motion for relief from judgment because the court, in denying their motions to continue the trial (based on Eugene and Alice's health issues) and in addressing Mark's lateness for trial (due to his alleged illness), deprived them of an opportunity to prove their inability-to-pay defense. However, these alleged errors occurred before final judgment and could have been raised on appeal. Thus, appellants' first assignment of error merely challenges the correctness of the court's decision on the merits and could have been raised in *Deer Lake II*. As a result, appellants cannot rely on Civ.R. 60(B) as a substitute for an appeal of the trial court's judgment based on these issues. *Gursky, supra.*

{¶27} In any event, even if appellants could have raised these issues in a motion for relief from judgment, they failed to comply with the requirements of Civ.R. 60(B). Appellants argue their motion for relief from judgment was made under Civ.R. 60(B)(1); however, this rule sets forth four different grounds for relief (mistake, inadvertence, surprise, or excusable neglect). Appellants do not identify the specific ground for relief on which they rely, and it is not this court's function to make appellants' argument for them. App.R. 16(A)(7).

9

**{¶28}** While far from clear, appellants appear to be arguing that Eugene's and Alice's health issues and Mark's lateness for trial provided excusable neglect for appellants' failure to present any evidence to support their inability-to-pay defense. "[T]here is no clear and established standard as to what constitutes excusable neglect and therefore it is a determination left to the discretion of the trial court." *Mateyko v. Crain*, 11th Dist. Trumbull No. 2011-T-0036, 2012-Ohio-1133, ¶21. This court held that neglect without substantial extenuating circumstances, such as sudden illness or natural disaster, does not constitute "excusable neglect." *State ex rel. Sinchak v. Chardon Local School Dist.*, 11th Dist. Geauga No. 2012-G-3078, 2013-Ohio-1098, ¶28.

**{¶29}** The record reflects Eugene's and Alice's health issues had been ongoing for a long time and the trial court gave appellants ample opportunity to seek a guardian for them, but appellants failed to do so. As a result, their health issues were not sudden and the court could properly find they did not provide a basis for excusable neglect.

**{¶30}** Further, as to Mark (as well as Deer Park and the Trust, which he represented), there was no evidence of excusable neglect. On the second day of trial, Mark did not appear on time. Defense counsel told the court that Mark had called him that morning and said he did not feel well. Counsel said that Mark might be on his way to court, but he could not be sure. The court noted on the record that, at the end of the first day of trial, Mark said he was not feeling well. However, the court said that he cross-examined the state's witnesses and "he appeared to be all right.  * * * [H]e appeared to be lucid and capable."

**{¶31}** When Mark finally appeared at 9:30 a.m., about one and one-half hour late, the court admonished him for not calling the court to say he would be late. The

10

court said that if he had done so, it might have waited, but, instead, not knowing, the court said it could only presume that he would not appear at all and that the court should proceed with the trial. The court said that when Mark entered the courtroom, the defense had rested and the state's counsel was making his closing argument. Since Mark had called defense counsel that morning and came to court, he was obviously not prevented by "substantial extenuating circumstances" from appearing on time or at least from calling the court.

{¶32} Nevertheless, the court asked Mark if he would like to proffer any evidence or to make a closing argument. Mark said he would "waive" a closing argument and the only evidence he wanted to proffer (which the court permitted) was a receipt showing he recently paid $2,000 to have some work done on the sewage treatment plant. Thus, although Mark had more than seven months to prepare for trial and the court gave him an opportunity to proffer whatever evidence he wished, he produced no testimony or other evidence supporting appellants' inability-to-pay defense. Contrary to appellants' argument, Mark did *not* say he was prevented from presenting any such evidence due to his parents' health issues or by being late for trial. Thus, the court did not deprive Mark of an opportunity to present evidence, and the court could properly find appellants failed to demonstrate excusable neglect.

{¶33} Further, appellants did not submit with their motion for relief from judgment any operative facts supporting their inability-to-pay defense. For example, appellants did not provide any specifics about their assets or liabilities. Nor did they present any facts demonstrating that paying the civil penalty would result in their bankruptcy or financial ruin, which was required to prove their defense. *Deer Lake II* at ¶49. "If the

11

material submitted by the movant in support of a motion for relief from judgment contains no operative facts or meager and limited facts and conclusions of law, it will not be an abuse of discretion for the trial court to overrule the motion. *Hasch v. Hasch*, 11th Dist. Lake No. 2008-L-183, 2009-Ohio-6377, ¶37.

{¶34} Since appellants did not present any operative facts in their motion for relief from judgment supporting their inability-to-pay defense, the trial court could properly find appellants failed to demonstrate a meritorious defense.

{¶35} In fact, the undisputed evidence at trial shows appellants were able to pay the civil penalty. This court noted in *Deer Lake II,* that at the time of trial, appellants had $454,000 in cash and also owned a valuable 40-acre parcel in Burton, Ohio, which they use in their business to operate a mobile home park. As a result, this court held the trial court's $212,000 civil penalty was not excessive. *Id.* at ¶49.

{¶36} Thus, even if appellants' first assignment of error was not barred as being a substitute for an appeal, the court did not abuse its discretion in denying appellants' motion for relief from judgment due to their failure to demonstrate grounds for relief (excusable neglect) or the existence of a meritorious defense (inability to pay).

{¶37} Appellants' first assignment of error is overruled.

{¶38} For their second and last assignment of error, appellants allege:

{¶39} "The trial court erred in denying the defendants' Civ.R. 60(B)(2) motion for relief from the July 18, 2013 judgment where after the civil penalty trial and judgment the state notified the Defendants that the to-be-issued NPDES permit would require improvements to the existing water treatment system costing approximately $65,000, an amount which materially and detrimentally affects the Defendants' ability to pay the

12

$212,000 civil penalty for violations of the Safe Drinking Water Act (R.C. Chapter 6109) and the Pollution Control Act (R.C. Chapter 6111)."

**{¶40}** Appellants argue that the report their engineer, George Hess, e-mailed to them one year after the trial, in which he estimated the cost to bring their waste-water treatment plant into compliance to be $65,000, is newly discovered evidence, entitling them to relief from judgment. Appellants argue that, because they will have to pay $65,000 in addition to the $212,000 civil penalty, the amount they will have to pay is even more excessive, entitling them to relief from judgment.

**{¶41}** "In order to be granted relief under Civ.R. 60(B)(2), 'the moving party must demonstrate that: (1) the evidence was actually "newly discovered", that is, it must have been discovered subsequent to trial; (2) the movant exercised due diligence; and (3) the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result.'" *Biro v. Biro*, 11th Dist. Lake No. 2006-L-068 and 2006-L-236, 2007-Ohio-3191, ¶110, quoting *Cominsky v. Malner*, 11th Dist. Lake No. 2002-L-103, 2004-Ohio-2202, ¶20. "Evidence that could have been discovered prior to trial by the exercise of due diligence does not qualify as newly discovered evidence." *Healey v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 25888, 2012-Ohio-2170, ¶16. Further, this court has stated that the new-evidence grounds for relief in Civ.R. 60(B) was "only meant to apply to evidence which was already in existence at the time of the trial, but the moving party was excusably unaware of it." *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2011-A-0065, 2012-Ohio-4005, ¶21. This court further stated: "Under this logic, documents which were not created until after the trial do not constitute 'new evidence' for purposes of seeking relief from a final judgment." *Id.*

{¶42} Since Hess' report was prepared on June 9, 2014, one year after the trial, the report is not newly discovered evidence that could be used as grounds to vacate the judgment.

{¶43} In addition, the information contained in the report could have been discovered by appellants before trial in the exercise of due diligence. The state introduced in evidence two letters ("notices of violation") the Ohio EPA sent appellants in March 2010 and May 2012, and thus long before the May 16, 2013 trial, which advised appellants they were required to apply for and obtain an NPDES permit in order to comply with the Water Pollution Control Act. Hess' report responded to these EPA letters by estimating the cost of the required compliance upgrades outlined in the EPA letters. Further, appellants retained Hess as an expert at least two years before trial. Thus, if appellants had acted with due diligence, they could have obtained a cost estimate from Hess prior to trial. Having failed to do so, the trial court could properly find Hess' report was not newly-discovered evidence.

{¶44} We therefore hold the trial court did not abuse its discretion in denying appellants' motion for relief from judgment.

{¶45} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.

14