[Cite as *State v. Turner*, 2016-Ohio-4733.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | **:** | **PER CURIAM OPINION** |
| Plaintiff-Appellee, | **:** | |
| - vs - | **:** | **CASE NO. 2015-L-116** |
| JOHN L. TURNER, JR., | **:** | |
| Defendant-Appellant. | **:** | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 14 CR 000533.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*John L. Turner, Jr.,* pro se, PID: A673-787, Belmont Correctional Institution, P.O. Box 540, 68518 Bannock Road, St. Clairsville, OH 43950 (Defendant-Appellant).

PER CURIAM

{¶1} Appellant, John L. Turner, Jr., pro se, appeals his conviction, following a jury trial, of seven counts of felony theft and one count of intimidation of a witness. These charges arose from appellant's breaking into several parked vehicles and stealing their contents. Appellant has previously filed three appeals of interlocutory orders, which were dismissed, and seven petitions for extraordinary relief, all of which were dismissed. The lead issue in this appeal is whether the trial court abused its

discretion in allowing the state to present evidence that appellant was wearing a Global Positioning System ("GPS") monitoring device at the time he committed the instant crimes. For the reasons that follow, we affirm.

{¶2} On Friday evening, January 17, 2014, at about 7:00 p.m., appellant broke into an SUV that was parked in the parking lot of a computer repair shop in Eastlake, Ohio, and stole its contents. During the break-in, Dillon Hardy, an employee of that shop, came outside for a cigarette break and heard a noise. Dillon saw appellant coming out of a broken window of the SUV carrying a backpack and briefcase. Dillon yelled at appellant, telling him to put the items back in the SUV and leave. Appellant turned toward Dillon and yelled, "man, I'll smoke you," which Dillon understood to be slang for "I'll kill you." While appellant made this threat, he reached behind his back and, according to Dillon, appeared to be reaching for a gun. Dillon was in fear for his life. He ran into the shop and called the police. Appellant left the scene with the stolen items in the car he was driving. Dillon provided appellant's description to the police and later identified him in a photo lineup.

{¶3} During the evening of January 17, 2014, and Saturday, January 18, 2014, appellant also broke into six vehicles that were parked in different parking lots in Mentor, Ohio and stole their contents. At the time appellant was wearing a GPS monitoring device that he was required to wear by the Adult Parole Authority ("APA") in 2013 due to the violation of his conditions of post-release control. Appellant's GPS device placed him at every location in Mentor where and when the break-ins and thefts were committed.

{¶4} On March 5, 2014, the Eastlake Police Department issued a warrant for appellant's arrest for the offenses he committed in that city.

**{¶5}** The APA was advised of appellant's involvement in these crimes. On March 12, 2014, appellant's parole officer, Yolanda Roy, called him and had him come into the office ostensibly for a routine appointment. However, when appellant arrived, she advised him he was being held for the Eastlake Police Department based on the warrant for appellant issued by that city. The APA also placed a hold on appellant for the violation of his post-release control, and he was picked up by the APA from the Lake County Jail on March 18, 2014. He was held by the APA until a parole revocation hearing was held on May 6, 2014. After that hearing, appellant was found guilty of a parole violation, and he was sanctioned to serve 200 days or just over six months in prison.

**{¶6}** On August 4, 2014, appellant was indicted. An amended indictment charged him with seven counts of theft, felonies of the fifth degree, and one count of intimidation of a witness, a felony of the third degree. Appellant pled not guilty.

**{¶7}** On November 10, 2014, appellant filed a pro se motion to represent himself. Following a hearing on that motion on December 22, 2014, the court granted it and appointed appellant standby counsel.

**{¶8}** Subsequently, appellant filed more than 90 motions. Pertinent to the issues raised on appeal, he filed a motion to suppress the GPS device and a motion to dismiss for lack of a speedy trial. He also appealed interlocutory rulings of the trial court and filed multiple petitions for extraordinary writs in this court. He also filed an affidavit of disqualification in the Ohio Supreme Court against the trial judge. These filings resulted in the trial being delayed several times until trial proceeded on September 11, 2015.

3

**{¶9}** Following the trial, the jury found appellant guilty of all counts in the amended indictment. After considering appellant's extensive criminal history dating back more than 30 years and other relevant factors, the court sentenced him to 12 months in prison on each of the seven theft counts and 18 months for intimidation, each term to be served consecutively to the others, for a total of 102 months, or eight and one-half years.

**{¶10}** Appellant appeals his conviction, asserting four assignments of error. For his first, he alleges:

**{¶11}** "Appellant was prejudiced by the Global Positioning System Regarding Post Release Control, denying Appellant Motion to Suppress GPS device. (Sic throughout.)

**{¶12}** Appellant filed two motions regarding his GPS device. In his first, which he referred to as a "Motion To Suppress Global Position [sic] (GPS) device," he sought to prevent the court from allowing any evidence that he was wearing a GPS device. In support of that motion, he argued his GPS device should be "inadmissible for any evidence" because the APA allegedly lacked authority to require that he wear the GPS device when it was placed on him in 2013. In his second motion regarding his GPS device, which he referred to as a "Motion To Preclude Global Positioning System (GPS) or Electronic Monitoring," appellant argued that the police improperly failed to obtain a warrant before obtaining his GPS tracking records.

**{¶13}** However, on appeal, appellant changes his argument and now contends the trial court erred in denying his motion to suppress evidence that he was wearing a GPS device because such evidence improperly suggested to the jury that he had previously committed "some wrong act." Appellant argues the probative value of this

4

evidence was outweighed by the danger of unfair prejudice and thus not admissible pursuant to Evid.R. 403(A). As a result, appellant's present argument, which is more properly directed to a motion in limine, is different from the arguments he raised below in support of his motions to suppress.

{¶14} It is well settled that arguments not raised and determined in the court below cannot be considered by a reviewing court. *BancOhio Nat'l Bank v. Abbey Lane, Ltd.*, 13 Ohio App.3d 446, 448 (10th Dist.1984), citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207 (1982). "Generally, the theory upon which a case is tried must be adhered to on appeal." *BancOhio, supra*, citing *Republic Steel Corp. v. Bd. of Revision of Cuyahoga Cty.*, 175 Ohio St. 179 (1963). Because the grounds urged by appellant on appeal for excluding evidence of his GPS device are different from those he asserted below, they cannot be raised for the first time on appeal.

{¶15} In any event, even if appellant had raised his relevance-vs.-prejudice argument below, it would still lack merit. "The admission or exclusion of evidence rests within the sound discretion of the trial court." *State v. Rhodes*, 11th Dist. Lake No. 2000-L-089, 2001 Ohio App. LEXIS 5650, *15 (Dec. 14, 2001). "An appellate court will not disturb the ruling of a trial court as to the admission or exclusion of evidence absent an abuse of discretion and a showing that appellant has suffered material prejudice." *Id.* at *15 -*16. Further, evidence is relevant and admissible if it has any tendency to make a consequential fact more or less probable. Evid.R. 401 and Evid.R. 402. A trial court, however, is required to exclude relevant evidence "* * * if its probative value is substantially outweighed by the danger of *unfair prejudice* * * *." (Emphasis added.) Evid.R. 403; *State v. Boggs*, 63 Ohio St.3d 418, 422 (1992).

5

{¶16} Here, the evidence that appellant was wearing a GPS device at the time he committed these crimes was highly relevant to the issue of identification because his GPS tracking records showed he was at each of the crime scenes when the crimes were committed. Detective Mark Ketheroff of the Mentor Police Department testified that on January 20, 2014, he was assigned to investigate the six thefts of items from vehicles in Mentor the previous weekend, on January 17 and 18, 2014. He reviewed the initial reports for the six thefts in Mentor and the theft in Eastlake. As to the thefts in Mentor, the first occurred on January 17, 2014, at about 5:00 p.m. at Chuck E. Cheese; the next two took place on January 17, 2014, at about 6:00 p.m. at Winking Lizard; and the next two occurred on January 17, 2014, at about 7:00 p.m. at Outback Steakhouse.

{¶17} On the following day, Saturday, January 18, 2014, at about 8:15 p.m., a vehicle was broken into at a butcher shop in Mentor. On January 23, 2014, a man recovered some of the items stolen during this theft in a clothes bin in the parking lot of Silverman's, a discount department store, at 6601 Harvard Ave. in Cleveland. He called the owner of these items whose business cards were in his stolen backpack and told him he had found his property. The victim then called the police who picked up the items for him.

{¶18} Detective Ketheroff contacted the Eastlake Police Department on January 20, 2014, and learned they had a witness to the theft that occurred in their city who identified appellant in a photo lineup. Also, from his investigation, Detective Ketheroff learned appellant was being monitored by GPS during January 17, 2014 and January 18, 2014. After learning this, the detective requested appellant's GPS tracking records from the APA.

{¶19} The electronic monitoring records for appellant showed that he was at each of the crime locations in Mentor at the times the thefts were committed. Further, appellant's GPS reports showed that on January 18, 2014, at about 9:15 p.m., one hour after the theft from the vehicle at the butcher shop parking lot in Mentor, appellant was at 4079 E. 66th St., near Silverman's and, minutes later, he was at his nearby residence at 6668 Harvard Ave. in Cleveland.

{¶20} Further, the state presented the least amount of evidence necessary to explain why appellant was wearing a GPS device at the time of his crimes. Yolanda Roy, appellant's parole officer, testified that she is employed as an "agent of the state of Ohio"; that as part of her job, she "supervises" individuals; that some of those individuals are required to wear a GPS monitoring device if they violate the terms of their supervision; that she began supervising appellant in 2012; and that he was wearing a GPS device on January 17 and 18, 2014.

{¶21} In order to explain to the jury how the police were able to track appellant's movements on January 17 and 18, it was necessary that the jury understand appellant was wearing a GPS device. While the implication could be drawn from this testimony that appellant had engaged in some sort of prior criminal conduct, Ms. Roy did not testify that appellant was on parole and she did not say he had any prior convictions. Thus, the least possible information was presented to explain to the jury why appellant was wearing a GPS device. In fact, during a pretrial hearing, the court explained to appellant that the court would only allow the minimum information to substantiate the reason why he was wearing a GPS device. The court stated, "That's gonna have to come in, because I don't know of any other way to explain to the jury why you're

wearing a [GPS] bracelet." The court then asked appellant if he had a better way of explaining that to the jury and appellant said, "No, sir."

{¶22} Further, "'Evid.R. 403 speaks in terms of *unfair* prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence *unfairly* prejudices a defendant. It is only the latter that Evid.R. 403 prohibits.'" (Emphasis added.) *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶107, quoting *State v. Wright*, 48 Ohio St.3d 5, 8 (1990). "The term 'unfair prejudice' * * * speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

{¶23} While the evidence that appellant was wearing a GPS device (showing his whereabouts at the time of his crimes) was prejudicial in that it tended to prove he committed these crimes, it was not unfairly prejudicial. The evidence was highly relevant and did not lure the jury into finding appellant guilty on a ground different from proof specific to the offenses charged. As a result, even if appellant had raised his relevance-vs.-prejudice argument below, the court did not abuse its discretion in allowing the state to present evidence that appellant was wearing the device.

{¶24} For his second assigned error, appellant contends:

{¶25} "The trial court failed to fully comply with Crim.R. 44(C)."

{¶26} Crim.R. 44(C) provides: "Waiver of counsel shall be in open court and the advice and waiver shall be recorded * * *. In addition, in serious offense cases the waiver shall be in writing."

{¶27} The parties agree that this was a serious offense case per Crim.R. 2(C) as each charge exposed appellant to more than six months in prison and that the

8

requirement of a writing thus applied to him. While the state agrees the trial court erred in not requiring that appellant confirm his waiver of counsel in writing, the state argues the error was harmless because the court substantially complied with Crim.R. 44(C). We agree.

{¶28} In *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, the Supreme Court of Ohio held that trial courts need only demonstrate substantial compliance with Crim.R. 44(C). *Martin, supra*, at ¶38. The Supreme Court stated:

{¶29} While literal compliance with Crim.R. 44(C) is the preferred practice, the written waiver provision of Crim.R. 44 is not a constitutional requirement, and, therefore, we hold that *trial courts need demonstrate only substantial compliance.* * * *

{¶30} Accordingly, we reaffirm that in the case of a "serious offense" as defined by Crim.R. 2(C), when a criminal defendant elects to proceed pro se, the trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel. * * * If substantial compliance is demonstrated, then the failure to file a written waiver is harmless error.

{¶31} "'To be valid such waiver must be made with an apprehension of the nature of the charges, * * * the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" *State v. Gibson*, 45 Ohio St.2d 366, 377 ([1976]), quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723 (1948). *Martin, supra*, at ¶38-40.

{¶32} Here, during the hearing on appellant's motion to represent himself, the trial court engaged in an exhaustive colloquy with him spanning 86 pages of transcript regarding appellant's experience in representing himself in prior criminal matters, the charges against him, his potential defenses, his potential maximum sentence, and the pitfalls of representing one's self. Appellant told the trial court that the Cuyahoga County Common Pleas Court allowed him to represent himself in 2010 in a case in

which he was charged with engaging in a pattern of corrupt activity based on break-ins and thefts. In addition, appellant told the trial judge that in a breaking and entering case he had in Summit County in 2013, the trial court allowed him to represent himself.

{¶33} Further, appellant detailed his criminal history. He told the trial court that his first criminal conviction was in 1986, and that he has been convicted of felonies three times in the last ten years. He said he was first sentenced to prison in 1989. In 2001, he was sentenced to seven years and he was released in 2008. In 2010, he was sentenced to two and one-half years on the Cuyahoga County RICO/theft case. While he was on post-release control for that case, he violated his post-release control in 2013, at which time he was required to wear the GPS device. Then, in May 2014, he was violated by the APA based on his involvement in the present case. He said he had been to prison six or seven times and most of his cases were for theft-related offenses.

{¶34} The court explained to appellant the nature of the charges and had the prosecutor provide an outline of the evidence she anticipated presenting at trial. The court advised appellant that, based on his criminal history, if he was found guilty of any or all of the present crimes, the court would likely send him to prison.

{¶35} The court asked appellant if he understood his defenses. Appellant said he did and discussed them with the court.

{¶36} The court asked appellant why he wanted to represent himself. Appellant said he did not feel an attorney would represent him to the best of his/her ability. He said he had had success in representing himself in the past. The judge strongly urged appellant not to represent himself and said that if he was facing such serious charges, he would not represent himself. The judge told appellant that he would be bound by all

10

the rules of evidence and procedure the same as an attorney would be and that he could not assist him because he has to be fair to both sides.

{¶37} With respect to the issue of waiver, the following exchange took place:

{¶38} JUDGE LUCCI: So you understand you have a state and federal constitutional right not only to the assistance, but to the effective assistance and representation by a qualified licensed attorney at law. You understand that?

{¶39} JOHN TURNER: Yes, sir.

{¶40} JUDGE LUCCI: Do you give up that right?

{¶41} JOHN TURNER: Are you saying as a - - for counsel?

{¶42} JUDGE LUCCI: Do you give up that right to an attorney?

{¶43} JOHN TURNER: Yes I do.

{¶44} JUDGE LUCCI: The Court finds that the Defendant has knowingly, voluntarily, and intelligently waived his right to counsel. Defendant understands the nature of the charges, the maximum penalties, any defenses, and the risks and liabilities he will incur, and the rules of evidence, procedure, and conduct. And has represented to the Court that he will comply with them, and conduct himself in a dignified manner, and he understands the purpose of standby counsel, and the Court finds that the Defendant is competent and has the ability to represent himself at the trial of this case.

{¶45} Because the trial court demonstrated substantial compliance with Crim.R. 44(C), the failure to obtain a written waiver from appellant was harmless error.

{¶46} For his third assignment of error, appellant alleges:

{¶47} "The trial court erred with the jury instruction on p. 4, and 5 of 16, of the jury instruction."

{¶48} Appellant challenges the court's jury instruction regarding evidence of crimes or acts other than the charged offenses. Appellant appears to argue in his reply brief that the "other acts" were his offenses in Eastlake. However, since those were part

11

of the charged offenses, they were not other acts. In any event, appellant concedes he failed to object to the court's instruction below. He thus waived all but plain error. Crim.R. 30(A) provides that "a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." This court has held that where an appellant fails to object to the jury instructions at trial, absent plain error, he waives any right to appeal this issue. *State v. Butcher*, 11th Dist. Portage No. 2011-P-0012, 2012-Ohio-868, ¶13, citing *State v. Underwood*, 3 Ohio St.3d 12 (1983), syllabus.

{¶49} Further, Crim.R. 52(B) allows us to correct "[p]lain errors or defects affecting substantial rights" that were not brought to the attention of the trial court. *State v. Devai*, 11th Dist. Ashtabula No. 2012-A-0054, 2013-Ohio-5264, ¶17. In *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), the Supreme Court of Ohio set forth very strict limitations on what constitutes plain error. First, there must be an error, i.e., a deviation from a legal rule. *Id.* Second, the error must be plain, i.e., the error must be an "obvious" defect in the proceedings. *Id.* Third, the error must have affected "substantial rights." *Id.* In *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, the Supreme Court of Ohio held that the defendant has the burden of demonstrating plain error. *Id.* at ¶17.

{¶50} Appellant quotes the court's charge to the jury on other acts testimony, but he fails to state how the instruction was erroneous. In fact, the instruction is the standard jury instruction on other acts evidence as set forth in OJI 401.25. This court has addressed the authoritative nature of Ohio Jury Instructions, as follows:

> {¶51} The standard instructions found in Ohio Jury Instructions, commonly referred to as OJI, are not mandatory. Rather, they are recommended instructions, based primarily upon case law and

12

statutes. The particular instruction to be given in a jury trial is fact specific and based upon the indictment, testimony, evidence, and the defenses available to the defendant. The standard instructions are crafted by the Ohio judicial conference and sanctioned by the Ohio Supreme Court to assist trial judges and lawyers in correctly and efficiently charging the jury on the law applicable to a particular case. The OJI are authoritative, and are generally to be followed and applied by Ohio's courts. *Cf. State v. Kucharski*, 2d Dist. [Montgomery] No. 20815, 2005-Ohio-6541, ¶25, fn. 1. The OJI are tested, both at trial and through thorough appellate and (usually) Supreme Court review. Standard criminal instructions are written under the particular statutes and existing precedent from the Ohio Supreme Court. When given, they insure accuracy and compliance with constitutional protections afforded to litigants and minimize reversible error. *State v. Jeffers*, 11th Dist. Lake No. 2007-L-011, 2008-Ohio-1894, ¶107. (O'Toole, concurring.)

{¶52} As noted above, the first requirement of plain error is that there was error. Because appellant fails to demonstrate the trial court erred in giving its other acts instruction to the jury, he failed to demonstrate the existence of plain error.

{¶53} For his fourth and last assigned error, appellant maintains:

{¶54} "The trial court erred denying Appellant motion to dismiss the charges for lack of a Speedy trial."  (Sic throughout.)

{¶55} R.C. 2945.71(C)(2) provides that a party who has been charged with a felony offense must be brought to trial within 270 days after his arrest.  Further, pursuant to R.C. 2945.71(E), each day during which an accused is held in jail in lieu of bail on a pending charge will be counted as three days.  Thus, R.C. 2945.71(C)(2) and (E) require the state to bring a felony defendant to trial within 270 days of arrest or within 90 days if the accused is held in jail in lieu of bail on the pending charge.

{¶56} "The standard of review of a speedy trial issue is to count the days of delay chargeable to either side, and determine whether the case was tried within the

13

time limits set by R.C. 2945.71." *State v. Kist*, 173 Ohio App.3d 158, 2007-Ohio-4773, ¶17 (11th Dist.).

**{¶57}** Appellant argues the trial court erred in denying his motion to dismiss for want of a speedy trial because he was tried more than 270 days after he was initially charged in the Willoughby Municipal Court. However, for the reasons that follow, we do not agree.

**{¶58}** As a preliminary matter, we note that the triple-count provisions in R.C. 2945.71(E) do not apply in this case. It is well settled that the existence of a valid parole holder prevents application of the triple-count provisions of R.C. 2945.71(E). *State v. Brown*, 64 Ohio St.3d 476, 479 (1992). This is because the triple-count provisions apply only to those defendants held in jail in lieu of bail *solely* on the pending charge, and *a parole violation is considered a separate offense. Id.* Because appellant was held on the parole holder and subsequent parole violation from March 18, 2014 until after his October 4, 2015 sentence, contrary to the argument in his "Supplement Reply Motion for the Fourth Assignment of Error," he was not entitled to application of the triple-count provisions *for any period of time while this matter was pending*.

**{¶59}** We now address whether any periods of time within the 270-day time limitation are not counted against the state. First, the four-month period between the date the municipal court nolled the complaint (April 1, 2014) and the date appellant was indicted (August 8, 2014) is not counted against the state. The Supreme Court of Ohio in *State v. Broughton*, 62 Ohio St.3d 253 (1991), held that for purposes of computing how much time has run against the state under R.C. 2945.71 et seq., the time period between the dismissal without prejudice of an original charge and the filing of a subsequent indictment, based on the same facts as alleged in the original charge, shall

14

not be counted against the state unless the defendant is held in jail or released on bail pursuant to Crim.R. 12(I). *Broughton* at 259-260.

{¶60} Since appellant was not held in jail or released on bail on these charges between the date his case was nolled by the municipal court (April 1, 2014) and the date he was indicted (August 8, 2014), that period is not counted against the state.

{¶61} Further, R.C. 2945.72 provides for reasonable extensions of time within which an accused must be brought to trial. Pertinent to this appeal, R.C. 2945.72 provides:

{¶62} The time within which an accused must be brought to trial * * * may be extended only by the following:

{¶63} (A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him * * *;

{¶64} * * *

{¶65} (E) Any period of delay necessitated by reason of a * * * motion, proceedings, or action made or instituted by the accused * * *.

{¶66} As the trial court found in its judgment denying the motion to dismiss for lack of a speedy trial, appellant was unavailable to be arraigned from the date on which he was indicted, August 8, 2014, until November 17, 2014, when he was conveyed from prison, where he was being held on the parole violation, to the trial court. As a result, that period is not counted against the state.

{¶67} Further, between November 10, 2014 and July 13, 2015, when appellant filed his motion to dismiss for lack of a speedy trial, appellant filed more than 90 motions and other proceedings, which substantially delayed the trial. Following a hearing on this motion, on July 24, 2015, the court entered judgment denying the motion in which the court stated:

15

{¶68} The defendant indicates that he was arrested due to the municipal court case on March 12, 2014. However, his motion also indicates that he was picked up by the Adult Parole Authority on March 18, 2014. Further, the court's docket indicates that the defendant had to be conveyed here from prison in order to be arraigned in this case [on November 17, 2014]. The time for bringing a defendant to trial is extended by any period during which the defendant is unavailable for trial or other hearing by reason of other criminal proceedings against him. R.C. 2945.72(A).

{¶69} Additionally, the time for bringing a defendant to trial is also extended by any period of delay necessitated by reason of a motion, proceeding, or action made or instituted by the defendant. R.C. 2945.72(E). This case was originally scheduled for trial on January 20, 2015, however, since his arraignment in the within action, the defendant has filed more than 90 motions in the within action. On December 22, 2014, the court conducted a hearing on the defendant's motion to represent himself. The motion was granted in an entry dated January 6, 2015. On January 9, 2015, the court ruled on the approximately 50 pending motions filed by the defendant. As part of this ruling, the court scheduled a hearing on the defendant's motion to suppress for February 19, 2015, and rescheduled the jury trial for March 2, 2015. On February 4, 2015, the court held a pretrial. At that time, the defendant indicated that the petition for writ of habeas corpus he had filed on November 25, 2014 was intended for the court of appeals. The court explained that filing the petition for writ of habeas corpus with the court of appeals would likely limit the court's jurisdiction, delaying the defendant's trial. As a result, on February 5, 2015, the court ordered that the petition be refiled with the court of appeals and the suppression hearing and trial were cancelled. On February 5, 2015, the defendant also filed a notice of appeal. On March 31, 2015, the court of appeals dismissed the defendant's petition for writ of habeas corpus. On May 15, 2015, the defendant filed a writ of mandamus in the court of appeals relating to this court's ruling on the defendant's motions for an investigator. That matter is still pending. On June 8, 2015, the court of appeals dismissed the defendant's appeal. Three days later, on June 11, 2015, the court rescheduled the defendant's suppression hearing for July 30, 2015. On July 1, 2015, the defendant filed an affidavit of disqualification with the Ohio Supreme Court, which was denied on July 6, 2015. Thus, the record demonstrates that the delays in the within case have been caused by motions, proceedings, or actions made or instituted by the defendant. In total, the defendant has filed in excess of 90 motions in the within action, thus further delaying the proceedings and extending the period of time within which the defendant must be tried.

{¶70} As an aside, we note that one week after the court denied appellant's motion to dismiss for lack of a speedy trial, on July 31, 2015, the court set this matter for trial on September 11, 2015. Between those dates, appellant filed some 40 additional motions. These included multiple motions for discovery, several motions to dismiss, a motion to suppress appellant's statement at his parole-violation hearing, a motion for a different judge, a motion for different standby counsel, and a motion to modify bail. The court timely addressed the motions and the trial proceeded as scheduled.

{¶71} In view of the foregoing analysis, the trial court did not err in denying appellant's motion to dismiss for lack of a speedy trial.

{¶72} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, P.J., DIANE V. GRENDELL, J., TIMOTHY P. CANNON, J., concur.