[Cite as *State v. Infante*, 2020-Ohio-992.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | ELEVENTH JUDICIAL DISTRICT |
| COUNTY OF TRUMBULL | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 2019-T-0043 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RALPH INFANTE | | COURT OF COMMON PLEAS COUNTY OF TRUMBULL, OHIO |
| Appellant | | CASE No. 2017TR00489 |

DECISION AND JOURNAL ENTRY

CALLAHAN, Judge.

{¶1} Defendant-Appellant, Ralph Infante, appeals from his convictions in the Trumbull County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Infante served as the mayor of the City of Niles ("the City") for more than twenty years. Before he was elected mayor and after he lost his final bid for reelection, he and his wife also owned and operated the Italian American War Veteran's Club ("the ITAM"). The ITAM was a members-only establishment that primarily functioned as a bar/restaurant and social organization. Individuals who were interested in joining would pay a small fee and, thereafter, would be welcome to frequent the club and engage in the activities it offered. Gambling was one type of activity that the club offered. Over the years, Mr. Infante routinely organized block games based on either professional or college-level football games.

{¶3} In the mid-2000s, a councilman for the City contacted the State of Ohio Auditor's Office and requested an audit of the City's bank account. The audit uncovered wrongdoing unrelated to Mr. Infante, but also led state officials to investigate him personally for public corruption. The investigation spanned several years with both state and federal officials participating in various aspects. Based on intelligence the officials received during their interviews, a review of documents and other items they seized at various junctures, and forensic analyses of financial accounts linked to Mr. Infante, his wife, and the ITAM, the officials concluded that Mr. Infante had routinely underreported his income, had misused the City's resources, and had otherwise abused his position while serving as mayor.

{¶4} Mr. Infante was ultimately indicted by a grand jury. His 41-count indictment contained

- nine counts of tampering with records related to his Ohio ethics disclosure forms;

- four counts of tampering with records related to his and his wife's federal income tax returns;

- three counts of tampering with records related to his and his wife's city income tax returns;

- two counts of gambling;

- two counts of operating a gambling house;

- one count of possessing criminal tools;

- seven counts of soliciting improper compensation;

- two counts of theft in office;

- one count of having an unlawful interest in a public contract;

- eight counts of bribery;

- one count of engaging in a pattern of corrupt activity; and

- one count of falsification.

Nine counts were dismissed before trial, and ten counts resulted in not guilty verdicts. The jury returned guilty verdicts on thirteen counts of tampering with records, two counts of gambling, two counts of operating a gambling house, two counts of theft in office, one count of having an unlawful interest in a public contract, one count of engaging in a pattern of corrupt activity, and one count of falsification.

{¶5} The State conceded that Mr. Infante's two counts of theft in office were allied offenses of similar import. The trial court, therefore, merged those two counts for purposes of sentencing. It then sentenced Mr. Infante to either prison or jail on each of his remaining counts and ordered him to serve those terms concurrently for a total of ten years in prison.

{¶6} Mr. Infante now appeals from his convictions and raises seven assignments of error for review. For ease of analysis, this Court rearranges several of his assignments of error.

II.

### ASSIGNMENT OF ERROR NO. 3

THE CONVICTIONS OF TAMPERING WITH RECORDS, R.C. §2913.42. VIOLATE OHIO'S PROHIBITION OF THE USE OF GENERAL CRIMINAL LAW PROVISIONS OVER SPECIFIC STATUTORY PROVISIONS OF A LESSER DEGREE.

{¶7} In his third assignment of error, Mr. Infante argues that the trial court erred when it refused to dismiss his tampering convictions. He claims that the State lacked authority to prosecute him under the general tampering statute because, in doing so, it ignored specific provisions in the Revised Code that penalize violations of ethics and tax reporting requirements. Mr. Infante argues that he is entitled to relief because the specific provisions ought to have controlled and the State essentially overcharged him to pursue harsher penalties. For the following reasons, this Court rejects his argument.

{¶8} Arguments or "issues that have not been raised at the trial court level cannot be raised for the first time on appeal." *State v. Hall*, 11th Dist. Trumbull No. 2008-T-0051, 2009-Ohio-6379, ¶ 37. *Accord State v. Turner*, 11th Dist. Lake No. 2015-L-116, 2016-Ohio-4733, ¶ 14. Likewise, "where a party proceeds in trial on a certain legal theory, he may not abandon [it] on appeal and proceed on a different theory in the appellate court." *State v. Urso*, 195 Ohio App.3d 665, 2011-Ohio-4702, ¶ 77 (11th Dist.). Issues raised for the first time on appeal "are deemed waived." *State v. Zukas*, 11th Dist. Portage No. 2003-P-0005, 2004-Ohio-2792, ¶ 21. *Accord State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus.

{¶9} Mr. Infante orally moved to dismiss several of his tampering convictions at his sentencing hearing. First, he asked the court to dismiss the three convictions related to his federal income tax returns because "those are governed appropriately by 26 U.S.C. 7206." Second, he asked the court to dismiss the convictions related to his Ohio ethics disclosure forms because:

> [the executive director of the Ohio Ethics Commission] [] testif[ied] that there's a specific statute on that which has to do with generating the report. The [S]tate here has charged tampering, and there's really no evidence that the document was tampered with. More in terms of that a document was created that wasn't accurate.

Finally, he asked the court to dismiss several of his convictions based on alleged inconsistencies in the jury's verdicts. Mr. Infante specifically indicated that his motions to dismiss were based on Crim.R. 29(C).

{¶10} Pursuant to Crim.R. 29(C), a party may move a court to "set aside [a] verdict and enter [a] judgment of acquittal." "The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and where the evidence is insufficient, to take the case from the jury." *State v. White*, 11th Dist. Trumbull No. 2001-T-0051, 2003-Ohio-4594, ¶ 28. Consistent with that purpose, Mr. Infante moved to dismiss the majority of his tampering convictions based on the State having produced "no evidence" of tampering. He never argued that the State overcharged him

and, therefore, lacked authority to prosecute him. He never argued that the tampering statute conflicted with any special provision of the Revised Code such that the latter controlled. *See* R.C. 1.51. Further, he never presented the trial court with an argument based on legislative intent. *Compare State v. Chandler*, 11th Dist. Trumbull No. 2015-T-0033, 2016-Ohio-1017, ¶ 4, ¶ 14-15.

{¶11} The record reflects that Mr. Infante never raised as grounds for his motion to dismiss the argument he now seeks to assert on appeal. Because he failed to raise his argument in the lower court, he waived it for purposes of appellate review. *See Hall*, 2009-Ohio-6379, at ¶ 37; *Urso*, 2011-Ohio-4702, at ¶ 77. Further, even if his argument was properly before us, it would lack merit. *See Turner*, 2016-Ohio-4733, at ¶ 15; *Urso* at ¶ 78. R.C. 1.51 only prohibits a prosecutor from charging a defendant under a general provision of the criminal code if the general provision and a special provision are irreconcilable on a particular issue. *See Chandler* at ¶ 16-17. Mr. Infante has made no attempt to compare the tampering statute with any particular provision of the Revised Code under the facts of this case to show that the two are irreconcilable. "[I]t is not this [C]ourt's function to make appellants' argument for them." *State ex rel. DeWine v. Deer Lake Mobile Park, Inc.*, 11th Dist. Geauga No. 2016-G-0077, 2017-Ohio-1509, ¶ 27, citing App.R. 16(A)(7). *Accord State v. Townsel*, 11th Dist. Lake No. 2014-L-033, 2014-Ohio-5470, ¶ 4-6. Because Mr. Infante failed to preserve his argument in the lower court and, in any event, has not demonstrated its merit on appeal, his third assignment of error is overruled.

<u>**ASSIGNMENT OF ERROR NO. 2**</u>

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION OF TAMPERING WITH RECORDS IN VIOLATION OF R.C. §2913.42.

{¶12} In his second assignment of error, Mr. Infante argues that his tampering convictions are based on insufficient evidence. Specifically, he argues that the State cannot rely on an omission to prove the element of falsification. Upon review, this Court rejects his argument.

{¶13} "As a general proposition, a 'sufficiency' argument raises a question of law as to whether the prosecution was able to present some evidence concerning each element of the charged offense." *State v. Almonte*, 11th Dist. Portage No. 2005-P-0093, 2006-Ohio-6688, ¶ 28.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶14} "No person, knowing [he] has no privilege to do so, and with purpose to defraud or knowing that [he] is facilitating a fraud, shall * * * [f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing * * * or record * * *." R.C. 2913.42(A)(1). Whoever does so is guilty of tampering with records. R.C. 2913.42(B)(1). Tampering with records is a third-degree felony "[i]f the writing * * * or record [at issue] is kept by or belongs to a local, state, or federal governmental entity * * *." R.C. 2913.42(B)(4).

{¶15} Paul Nick testified as the executive director of the Ohio Ethics Commission. He explained that each year state, county, and city elected officials are required to complete an ethics disclosure form wherein they must disclose personal financial matters. For elected officials whose annual salary exceeds $16,000, those matters include any sources of income, any gifts they receive in excess of $75, and the names of any businesses they or their immediate family members operate. Mr. Nick confirmed that any rental income, gambling income, or monetary gifts were matters that elected officials like Mr. Infante had to disclose.

{¶16} Relevant to this appeal, the State introduced through Mr. Nick the ethics disclosure forms that Mr. Infante filed from 2007 through 2014. Each form included, among other items: (1)

a table for Mr. Infante to list his sources of income or, alternatively, a box to check to indicate that he had no sources of income; (2) a table for Mr. Infante to list the sources of any gifts he had received or, alternatively, a box to check to indicate that he had no sources of gifts; and (3) a table for Mr. Infante to list the names of any businesses he or his immediate family members operated or, alternatively, a box to check to indicate that there were no businesses he was required to list. For the years 2007 through 2014, Mr. Infante indicated that he had no gifts or businesses to disclose by checking the applicable boxes on his forms. Moreover, the only sources of income he listed were his mayoral salary, his salary from his position on the board of elections, and his pension.

{¶17} From 2009 until 2013, Mr. Infante and his wife used the same registered tax preparer to prepare their personal federal, state, and local tax forms. The tax preparer testified that he would meet with Mr. Infante and his wife each year, review their W-2s, and discuss their taxable income. For the years 2009 through 2011, Mr. Infante failed to disclose any gambling or rental income. For the years 2012 and 2013, he disclosed that he and his wife owned a rental property, but failed to disclose any gambling income.

{¶18} Chris Rudy, an investigator with the State of Ohio Auditor's Office, testified regarding several additional sources of income that Mr. Infante received over the years, but failed to disclose. Those additional sources of income included rental income that he and his wife received on their rental property, income they received operating the ITAM and conducting gambling pools there, various cash deposits from Mr. Infante's annual political fundraiser, and other cash deposits that the Auditor's Office was unable to link to any specific source. Between 2007 and 2014, the Auditor's Office identified a total of $103,604.55 worth of unaccounted for cash deposits in the Infantes' bank account. Further, there was evidence that, in 2007, the Infantes

accepted and failed to disclose a gift of tickets to the College Football National Championships, valued at approximately $4,000 a ticket.

{¶19}   Several other witnesses offered testimony that served as circumstantial evidence of Mr. Infante's mental state concerning his disclosures.  G.M., a former member of the ITAM, testified that he donated to Mr. Infante's campaign and gave him money in exchange for Mr. Infante securing a job for his son.  He testified that Mr. Infante later told him to lie to investigators about the amount of his donation.  Likewise, S.S., a city employee, testified that he initially lied to investigators because Mr. Infante encouraged him to do so.  He testified that Mr. Infante told him not to "worry about the f***ing cops because I got this.  I own these judges in this town." Similarly, Mr. Infante told B.P., a former employee in the City's Water Department that "he owned the judges" as well as the City and "[could] do what he want[ed]."  Finally, Deane Hassman, an investigator with the FBI, testified regarding interviews he conducted with Mr. Infante in 2009 and 2015.  He recorded both interviews without Mr. Infante's knowledge, and the State played those recordings at trial.  During the interviews, Mr. Infante significantly downplayed his sources of income and changed many of his answers as Agent Hassman presented him with additional information.  For example, he initially claimed that his wife did not have any side jobs from which she earned tips, but later changed his answer as he attempted to explain the cash deposits that routinely appeared in their bank account.  He also gave Agent Hassman entirely different answers about the source of the tickets he procured when he and his wife attended the College Football National Championships.  In 2009, he admitted that he accepted the tickets from the owner(s) of a large company headquartered in the City and might not have paid for them.  Yet, in 2015, he insisted that his wife had paid for the tickets as a birthday present to him.  He also insisted that he had given Agent Hassman that information back in 2009.

{¶20}   Mr. Infante argues that his tampering convictions are based on insufficient evidence because, as a matter of law, a mere omission does not amount to tampering.   According to Mr. Infante, the tampering statute requires some affirmative act on the part of a defendant such as purposely altering a document.   Because, at best, his actions were limited to inaccurately reporting certain information, he claims that he never falsified, destroyed, removed, concealed, altered, defaced, or mutilated any records.   *See* R.C. 2913.42(A)(1).

{¶21}   As noted, the tampering statute forbids any person from falsifying a record in the absence of a privilege to do so and for the purpose of committing a fraud.   R.C. 2913.42(A)(1).   A person defrauds another if he knowingly obtains a benefit for himself "by deception."   R.C. 2913.01(B).   The term "deception" includes "knowingly * * * causing another to be deceived by any false or misleading representation, *by withholding information*, by preventing another from acquiring information, or by any other conduct, act, *or omission* that creates, confirms, or perpetuates a false impression in another * * *."   (Emphasis added.)   R.C. 2913.01(A).   "[F]iling a form containing false information with the intent to defraud can be a violation of R.C. 2913.42."   *State v. Brunning*, 134 Ohio St.3d 438, 2012-Ohio-5752, ¶ 2.   *Accord State v. Grooms*, 8th Dist. Cuyahoga No. 105874, 2018-Ohio-1093, ¶ 36 (tampering conviction upheld where defendant failed to disclose a change in income and falsely reported that there had been "no change"); *State v. Burge*, 9th Dist. Lorain No. 16CA010936, 2017-Ohio-5836, ¶ 36 (upholding tampering conviction where defendant purposely failed to disclose required information on his financial disclosure forms).

{¶22}   Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that Mr. Infante tampered with records.   *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus.   The State set forth

evidence that he repeatedly filed ethics disclosure forms and tax returns containing false information. Each year, he affirmatively represented on his disclosure forms that he had neither received gifts, nor operated any businesses when, in fact, the opposite was true. He also underreported his sources of income, neglecting to include income related to a rental property, the operation of the ITAM, gambling pools he had conducted, various cash deposits from his annual fundraiser, and more than $100,000 worth of other, unaccounted for cash deposits. Mr. Infante did not record the foregoing information on his disclosure forms or share it with his tax preparer for purposes of preparing his federal and local tax forms. Further, the State set forth circumstantial evidence tending to show that he knowingly withheld that information to reap a benefit for himself rather than omitting it due to confusion or a mistake. *See Brunning* at ¶ 2; R.C. 2913.01(A), (B). Upon review, Mr. Infante has not shown that his tampering convictions are based on insufficient evidence. As such, his second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 6

THE STATE LACKED JURISDICTION TO CHARGE THE APPELLANT FOR TAMPERING WITH RECORDS, CONVICTIONS BASED UPON VIOLATIONS OF FEDERAL TAX REPORTING LAWS.

{¶23} In his sixth assignment of error, Mr. Infante argues that two of his convictions for tampering with records are void for lack of subject matter jurisdiction. Specifically, he argues that the common pleas court lacked the authority to adjudicate the counts related to his federal tax returns. Upon review, this Court rejects his argument.

{¶24} "Subject matter jurisdiction defines a court's authority to adjudicate and asks whether legislation empowers the court to hear a case of the kind at issue." *State ex rel. Thomas v. Disanto*, 11th Dist. Lake No. 2016-L-110, 2017-Ohio-7292, ¶ 12. "[A] claim of lack of subject matter jurisdiction may be raised at any stage of the proceedings." *State v. Jones*, 11th Dist.

Portage Nos. 2010-P-0051, 2010-P-0055, 2011-Ohio-5109, ¶ 12.  This Court reviews de novo an appellant's claim that a trial court proceeded in the absence of subject matter jurisdiction.  *Id.*

{¶25}  "The court of common pleas has original jurisdiction of all crimes and offenses * * *."  R.C. 2931.03.  *Accord* Ohio Constitution, Article IV, Section 4(B).  "A person is subject to criminal prosecution and punishment in this state if * * * [t]he person commits an offense under the laws of this state, any element of which takes place in this state."  R.C. 2901.11(A)(1).

{¶26}  Mr. Infante argues that the court of common pleas lacked the authority to adjudicate his tampering counts insofar as they concerned his federal tax returns.  Though his conduct took place in Ohio, he argues that his convictions required the State to prove that he violated federal laws.  Because "the state was interpreting federal law in determining that [his] filings were fraudulent" and the common pleas court cannot adjudicate federal law violations, he argues his convictions are void for lack of subject matter jurisdiction.

{¶27}  Upon review, this Court rejects Mr. Infante's argument that his tampering convictions, insofar as they concern his federal tax returns, are void for lack of subject matter jurisdiction.  The State did not charge Mr. Infante with violating any federal tax laws.  Rather, it charged him with violations of the state criminal code.  *See* R.C. 2913.42.  To secure his convictions, the State only needed to prove that he falsified records in the absence of a privilege to do so and for the purpose of committing a fraud.  *See* R.C. 2913.42(A)(1).  The fact that the records underlying his charges were federal documents did not deprive the common pleas court of jurisdiction.  Indeed, the tampering statute specifically provides for a felony-level enhancement in instances where a defendant has tampered with a record that "is kept by or belongs to a local, state, *or federal governmental entity* * * *."  (Emphasis added.)  R.C. 2913.42(B)(4).  Mr. Infante has

not shown that his tampering convictions are void for lack of subject matter jurisdiction. Consequently, his sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 1

THE EVIDENCE IS INSUFFICIENT TO CONVICT INFANTE OF ENGAGING IN PATTERN OF CORRUPT ACTIVITY, R.C. 2923.32(A)(1).

{¶28} In his first assignment of error, Mr. Infante argues that his conviction for engaging in a pattern of corrupt activity is based on insufficient evidence. Specifically, he argues that there was no evidence he ever associated with or conducted a criminal enterprise. Upon review, this Court concludes that Mr. Infante's argument lacks merit.

{¶29} As previously noted, a sufficiency challenge generally "raises a question of law as to whether the prosecution was able to present some evidence concerning each element of the charged offense." *Almonte*, 2006-Ohio-6688, at ¶ 28. In analyzing a sufficiency challenge, a reviewing court will

> examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus.

{¶30} R.C. 2923.32, the corrupt activity statute, is "Ohio's version of the federal Racketeering Influenced and Corrupt Organizations Act ('RICO')[.]" *State v. Birdsong*, 11th Dist. Lake No. 2013-L-003, 2014-Ohio-1353, ¶ 42. The statute provides, in relevant part, that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." R.C. 2923.32(A)(1). Thus, to secure a conviction under the statute, the State must "[be] able to 'prove both the existence of an "enterprise" and the connected "pattern of racketeering activity."'" *State*

*v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, ¶ 7, quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981). Though the two elements are distinct, the State may rely on the same evidence to prove both elements. *See Beverly* at ¶ 7.

{¶31} Typically, the "enterprise" at the heart of a corrupt activity conviction "is entirely an 'association in fact,' i.e. a de facto enterprise." *Id.* at ¶ 9. "An association-in-fact enterprise has been defined as 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* at ¶ 9, quoting *Turkette* at 583. The enterprise may be either illicit or licit and comprised of "any individual, sole proprietorship, partnership, * * * government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). "The definition * * * is remarkably open-ended[,]" *Beverly* at ¶ 8, and may "'encompass even a single individual * * *.'" *State v. Gregg,* 11th Dist. Ashtabula No. 2006-A-0013, 2007-Ohio-1201, ¶ 29, quoting *State v. Habash*, 9th Dist. Summit No. 17071, 1996 WL 37747, *5 (Jan. 31, 1996). As such, "'the existence of an association-in-fact [enterprise] is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure.'" *Beverly* at ¶ 11, quoting *Boyle v. United States*, 556 U.S. 938, 951 (2009).

{¶32} To establish a "pattern of corrupt activity," the State must set forth evidence of "two or more incidents of corrupt activity * * * that are related to the affairs of the same enterprise * * *." R.C. 2923.31(E). The incidents cannot be isolated or "so closely related to each other and connected in time and place that they constitute a single event." *Id.* The crimes of tampering with records, gambling, operating a gambling house, theft in office, and having an unlawful interest in a public contract are all examples of "corrupt activity." *See* R.C. 2923.31(I)(2).

{¶33} As previously noted, the State set forth evidence that Mr. Infante repeatedly filed ethics disclosure forms and tax returns containing false information. Over the course of eight

years, he reported that he had not received any gifts and that his sources of income were limited to his salaried positions. Yet, his bank records reflected income related to a rental property, the operation of the ITAM, gambling pools he had conducted, various cash deposits from his annual fundraiser, and more than $100,000 worth of other, unaccounted for cash deposits. The foregoing conduct ultimately resulted in thirteen separate convictions for tampering with records, all of which were incidents of "corrupt activity." *See* R.C. 2923.31(I)(2)(c).

{¶34} The State also set forth evidence that Mr. Infante organized gambling pools on a regular basis and personally profited from those pools. It is undisputed that, for many years, he and his wife operated the ITAM, a members-only bar/restaurant. D.D., a former employee there, testified that Mr. Infante routinely organized gambling pools for members based on either professional or college-level football games. She indicated that blocks would be sold for the games, with the blocks ranging in price. At different times, there would be blocks available to purchase for either $10, $25, $30, or $300 a piece. If various scores during a football game matched the numbers associated with a purchaser's block, the purchaser would receive a cash prize. The State introduced, as exhibits, pieces of paper on which various block games and the purchasers for those games had been handwritten. D.D. identified Mr. Infante's handwriting on many of those exhibits, all of which were confiscated from Mr. Infante's home when the police executed a search warrant there.

{¶35} A forensic auditor with the State of Ohio Auditor's Office reviewed the records of the gambling pools Mr. Infante conducted from 1992 until 2015 and calculated his total profit. Even though several years' worth of records were missing, the auditor estimated that Mr. Infante earned more than $34,000 as a result of the block games he organized during the years she reviewed. The foregoing conduct ultimately resulted in two convictions for gambling and two

convictions for operating a gambling house, all of which constituted additional incidents of "corrupt activity." *See id.*

{¶36} The State also produced a wealth of other evidence tending to show that Mr. Infante abused his elected position in a variety of manners. For example, several witnesses testified that he accepted benefits from and bestowed benefits upon the owner(s) of a large company headquartered in the City. There was testimony that he: (1) accepted football game tickets, valued at approximately $4,000 each, from the company's owner without paying for them; (2) routinely requested that the company purchase tickets to his annual campaign fundraiser; (3) urged the City's Board of Control, as one of its three members, to waive building permit and zoning fees for the company in excess of $12,000; (4) arranged for the company to receive certain city property and services without charge; and (5) never arranged to collect more than $60,000 owed to the City from the company after it was discovered that the company had not been billed for water at one of its properties. There also was evidence that Mr. Infante sanctioned and, at times directed, the use of city-owned property and services for the personal benefit of himself or others (e.g., snowplowing and tree-trimming services), used city-owned property as a campaign resource (e.g., city computers), misused city-owned funds (e.g., money collected from scrap metal sales), and made hiring decisions in contravention of the City's policies (e.g., by rehiring his brother and by approving a bid he favored without the input of City Council). The foregoing conduct and other, similar conduct resulted in two convictions for theft in office and one conviction for having an unlawful interest in a public contract, all three of which constituted additional incidents of "corrupt activity." *See* R.C. 2923.31(I)(2)(a).

{¶37} For purposes of his sufficiency challenge, Mr. Infante does not dispute that he engaged in a pattern of corrupt activity. Instead, he argues that his conviction is based on

insufficient evidence because the State failed to prove that he belonged to or associated with an enterprise. He argues that his crimes were self-serving in nature and divorced from any common purpose shared by a larger group. To the extent they involved other individuals, he claims that those individuals acted in their own self-interest, not for the common purpose of providing him with power and money. According to Mr. Infante, "[o]ne person, violating multiple reporting offenses or ethical considerations, does not constitute a criminal enterprise."

{¶38} While a criminal enterprise must have a common purpose, "[t]he definition of 'enterprise' is remarkably open-ended." *Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, at ¶ 8. It includes "'*any individual, * * * or group of persons associated in fact although not a legal entity * * *.*'" (Emphasis sic.) *State v. Sands*, 11th Dist. Lake No. 2007-L-003, 2008-Ohio-6981, ¶ 148, quoting R.C. 2923.31(C). "As is plain from the terms of the [statute] 'the legislature defined this term broadly to encompass *even a single individual * * *.*'" (Emphasis added.) *Gregg*, 2007-Ohio-1201, at ¶ 29, quoting *Habash*, 1996 WL 37747, at *5. Thus, "sufficient evidence of a pattern of corrupt activity [was] adduced if the [S]tate introduce[d] evidence [tending to] show that Mr. [Infante], *either by himself*, or in concert with others, * * * engaged in a pattern of activity consisting of two or more independent acts." (Emphasis added.) *Sands* at ¶ 152. *Accord Gregg* at ¶ 31.

{¶39} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that Mr. Infante was associated with an enterprise when he committed his offenses. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The State produced evidence that Mr. Infante routinely used his elected position and the ITAM to earn additional income. For years, he accepted money, gifts, and services as a result of his elected position and wielded the authority he possessed as mayor to

facilitate quid pro quo arrangements at the expense of the City. Even if Mr. Infante did not consistently associate with a particular group of individuals in furtherance of his self-serving objectives, there was evidence that he used both the office of mayor and the ITAM as a means of securing unreported income and other benefits for himself. *See* R.C. 2923.31(C) (noting that an enterprise can consist of individuals, government agencies, or any other organizations). Thus, a rational trier of fact could have determined that he, either by himself or in concert with the office of mayor and the ITAM, engaged in a pattern of corrupt activity. *See Sands* at ¶ 152; *Gregg* at ¶ 31. *See also State v. Clayton*, 2d Dist. Montgomery No. 22937, 2009-Ohio-7040, ¶ 39-46. Because Mr. Infante has not shown that his conviction is based on insufficient evidence, his first assignment of error is overruled.

## <u>ASSIGNMENT OF ERROR NO. 4</u>

THE TRIAL COURT DENIED THE APPELLANT DUE PROCESS OF LAW AND A FAIR TRIAL BY ALLOWING IMPROPER LAY OPINION TESTIMONY TO BE CONSIDERED BY THE JURY TO DETERMINE IF THE APPELLANT PROFITED FROM A GAME OF CHANCE.

{¶40} In his fourth assignment of error, Mr. Infante argues that the trial court abused its discretion when it allowed a forensic auditor to testify that he earned a profit as a result of the gambling pools he organized at the ITAM. Mr. Infante argues that the court ought to have excluded the auditor's testimony, as it was entirely speculative and lacked an adequate foundation. For the following reasons, this Court rejects his argument.

{¶41} "The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion is a term of art, "connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113,

2009-Ohio-2089, ¶ 30. "'Stated differently, an 'abuse of discretion,' is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Urch*, 11th Dist. Ashtabula No. 2019-A-0034, 2019-Ohio-3996, ¶ 14, quoting *State v. O'Keefe*, 11th Dist. Lake No. 2018-L-088, 2019-Ohio-841, ¶ 24.

{¶42} Evid.R. 701 allows lay witnesses to give "testimony in the form of opinions or inferences * * * which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid. R. 701. Lay witness opinion testimony is not prohibited "merely because it embraces the ultimate issue to be decided by the trier of fact." *State v. Heilman*, 11th Dist. Trumbull Nos. 2004-T-0133, 2004-T-0135, 2006-Ohio-1680, ¶ 96, citing Evid.R. 704. "[T]he critical point is whether the opinion of the lay witness will truly be helpful to the jury * * *." *State v. O'Brien*, 11th Dist. Lake No. 2011-L-011, 2013-Ohio-13, ¶ 45.

{¶43} As previously noted, a forensic auditor with the State of Ohio Auditor's Office reviewed the records of the gambling pools Mr. Infante conducted from 1992 until 2015 and calculated his total profit. She also testified as to the profits he would have earned based on individual games. For example, she testified that $20 block games would always result in a profit of $25, but $30 block games had two profit variations. Because some $30 block games included a higher third-quarter payout, the profit on some $30 games would be $600 while the profit on others would be $700. Likewise, she testified that $300 block games had profit variations, depending on whether a game included a raffle. A $300 block game with a raffle would result in a profit of $1,300 while a game without a raffle would result in a profit of $1,800.

{¶44} The forensic auditor specifically testified that she defined "profit" as the difference between the amount of money a game generated in purchases and the amount of prize money it

paid out. To calculate Mr. Infante's total profits over the years, she simply added together the profits she had calculated on the individual games. The forensic auditor readily admitted that her profit calculations were derived strictly from the game records Mr. Infante kept and did not account for any additional expenditures he might have made in connection with the games. For instance, numerous people testified that Mr. Infante held an event each year for the individuals who participated in the $300 block games. That event included dinner, alcohol, and the chance to win an assortment of basket raffle prizes at no additional cost to the participants. The forensic auditor conceded that she did not have a record of any monies Mr. Infante might have spent to pay for that event, so her profit calculations did not take those potential expenses into account.

{¶45} As part of her investigation, the forensic auditor also reviewed the Infantes' personal bank records and bank records from the ITAM. The ITAM records were limited to more recent activity, as the bank had destroyed any records predating 2009. Even so, the forensic auditor testified that she compared the available records with the Infantes' personal bank records to identify any transfers between the two accounts. Because the transactions she inspected consisted of nondescript cash deposits and withdrawals, she was unable to establish a link between any specific transactions and the block games. She was able to determine, however, that the Infantes withdrew more funds from the ITAM account than they deposited. From September 2009 to January 2016, they withdrew over $16,000 from that account and deposited less than $12,000.

{¶46} Mr. Infante argues that the trial court erred by admitting the forensic auditor's testimony on profit. He argues that her testimony was entirely speculative, as it was premised upon limited information. He notes that she was unable to connect any actual funds deposited into his or the ITAM's bank account with proceeds from the block games. Nevertheless, she was permitted to testify that he profited from those games. Because her opinion was speculative and

lacked a proper foundation, Mr. Infante argues, it was not rationally based on her perception or helpful to the jury. Thus, he claims that the court erred by admitting it.

{¶47} Having reviewed the record, this Court cannot conclude that the trial court abused its discretion when it allowed the forensic auditor to testify. *See Issa*, 93 Ohio St.3d at 64. The forensic auditor specifically stated that she defined "profit" as the difference between the funds collected and the funds paid out on a block game. She never directly linked that "profit" to actual income that Mr. Infante earned, and he was able to stress that point on cross-examination. The forensic auditor conceded that her testimony was based solely upon the records she reviewed and limited to the information they contained. As the trial court aptly noted when it rejected Mr. Infante's objection to her testimony, the testimony amounted to "[b]asic addition." It was, therefore, rationally based upon her perceptions and not the result of speculation. *See* Evid.R. 701. Moreover, it was helpful to the jury. *See id. See also O'Brien*, 2013-Ohio-13, at ¶ 45. Even if simple calculations were not beyond the ken of the jury, the block game and bank records seized herein were voluminous. The forensic auditor's testimony allowed the State to present that information to the jury in an efficient manner rather than pursue a more time-consuming presentation. *See, e.g., State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2012-Ohio-4888, ¶ 55. Accordingly, this Court cannot conclude that the trial court abused its sound discretion by admitting that testimony. *See Underwood*, 2009-Ohio-2089, at ¶ 30. Mr. Infante's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 5

THE FINDING OF GUILT BY THE JURY OF R.C. §2923.31(A)(1), THEFT IN OFFICE, IS VIOLATIVE OF THE DUE PROCESS CLAUSE AS THE JURY WAS NOT REQUIRED TO UNANIMOUSLY FIND THE APPELLANT GUILTY OF EACH MATERIAL ELEMENT OF THE OFFENSE.

{¶48}    In his fifth assignment of error, Mr. Infante argues that his due process rights were violated when he was convicted of two counts of theft in office in the absence of a unanimous finding as to the conduct that supported each count. Because each count alleged multiple instances of misconduct and the jury was not instructed on unanimity, Mr. Infante argues, the trial court failed to ensure that all twelve jurors agreed on the conduct giving rise to his convictions. For the following reasons, this Court rejects his argument.

{¶49}    Crim.R. 31(A) requires jury verdicts to be unanimous. All twelve jurors must agree that the elements of an offense have been proven beyond a reasonable doubt. *State v. Hendrix*, 11th Dist. Lake No. 2011-L-043, 2012-Ohio-2832, ¶ 44. Even so, "jurors need not agree [on the] single way * * * an element is satisfied[,]" if the element can be satisfied by one of several possible means. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 38. When examining whether a defendant's due process rights and rights under Crim.R. 31(A) have been offended, "the critical inquiry is whether the case involves 'alternative means' or 'multiple acts.'" *Gardner* at ¶ 48.

{¶50}    Alternative means cases are those "'where a single offense may be committed in more than one way * * *.'" *Id.* at ¶ 49, quoting *State v. Jones*, 96 Hawai'i 161, 170 (2001). In those cases, an offense involves "a 'single conceptual grouping of related facts * * *.'" *State v. Johnson*, 46 Ohio St.3d 96, 105 (1989), quoting *United States v. Duncan*, 850 F.2d 1104, 1113 (6th Cir.1988). The jurors therein need not agree on the facts underlying their guilty verdict because "'different jurors may be persuaded by different pieces of evidence * * *.'" *Schad v. Arizona*, 501 U.S. 624, 631 (1991), quoting *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring.). For example, if all twelve jurors in an aggravated burglary case can agree that a defendant forcibly trespassed with the intent to commit a criminal offense, they need not agree on *which* criminal offense he intended to commit. *See State v. Fry*, 125 Ohio St.3d 163,

2010-Ohio-1017, ¶ 122-123. So long as "'a rational trier of fact could have found each [alternative] means of committing the crime proved beyond a reasonable doubt,'" the verdict may stand. *Gardner* at ¶ 49, quoting *Jones* at 170.

{¶51} Multiple acts cases are those in which "a single count can be divided into two or more 'distinct conceptual groupings * * *.'" *Johnson* at 104, quoting *United States v. Gipson*, 553 F.2d 453, 458 (5th Cir.1977). In those cases, "'several acts are alleged and any one of them could constitute the crime charged.'" *Gardner* at ¶ 50, quoting *Jones* at 170. Because a conviction may not rest upon a "patchwork" verdict, *see Johnson* at 105, a jury in a multiple acts case "'must be unanimous as to which act or incident constitutes the crime.'" *Gardner* at ¶ 50, quoting *Jones* at 170. For example, if a defendant is charged with one count of complicity based on three distinct theories, all twelve jurors must agree on whether the defendant induced others to commit the crime (solicitation), helped others commit the crime (aid and abetted), or agreed with others to commit the crime (conspiracy). *See State v. Washington*, 11th Dist. Lake No. 95-L-128, 1997 WL 1843865, *7-8 (Jan. 10, 1997). To ensure juror unanimity, "'either the State [must] elect the particular criminal act upon which it will rely for conviction, or [] the trial court [must] instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.'" *Gardner* at ¶ 50, quoting *Jones* at 170. "Trial judges are in the best position to determine the content of the instructions based on the evidence at trial and on whether the case presents an alternative-means or multiple-acts scenario." *Gardner* at ¶ 74.

{¶52} Mr. Infante argues that his due process rights were violated when the trial court failed to ensure that the jury reached a unanimous verdict on his two counts of theft in office. He notes that the State alleged several different kinds of misconduct in support of those counts, including misconduct related to the sale of scrap metal, misconduct related to the use of city

equipment and employees for campaign purposes, and misconduct otherwise related to the use of city equipment and resources for private purposes. Because the State alleged multiple acts of misconduct in support of his charges, Mr. Infante argues, the trial court was required to either instruct the jury on unanimity or provide them with more detailed verdict forms (i.e., forms that required them to agree on specific instances of misconduct).

{¶53} Initially, this Court notes that Mr. Infante never asked the trial court to instruct the jury on unanimity or include a special finding on the verdict forms. He did repeatedly raise a concern about unanimity, but did so under the guise of pre- and post-verdict motions to dismiss. He did not object to the court's instructions on theft in office and, at the close of the jury instructions, he specifically indicated that he was satisfied with the instructions. Because Mr. Infante did not request an instruction on unanimity or changes to the verdict forms, this Court questions whether he has preserved his argument for appeal. *See Washington* at *8. Assuming without deciding that his argument is properly before this Court, however, we nonetheless conclude that it lacks merit.

{¶54} Mr. Infante's argument is essentially that the State based his theft in office charges on multiple acts, so the jury had to agree on which act he committed. *See Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, at ¶ 50, quoting *Jones*, 96 Hawai'i at 170. As noted, multiple acts cases are those in which "'several acts are alleged and any one of them could constitute the crime charged.'" *Gardner* at ¶ 50, quoting *Jones* at 170. While, at first glance, it might appear that Mr. Infante's two charges were based on multiple acts, the record does not support the conclusion that his charges could "be divided into two or more 'distinct conceptual groupings * * *." *Johnson* 46 Ohio St.3d at 104, quoting *Gipson*, 553 F.2d at 458. Instead, in these particular circumstances, the jury was presented with an alternative-means scenario. *See Gardner* at ¶ 49, quoting *Jones* at 170.

**{¶55}** If an offender, in the same employment or capacity, commits a series of offenses for theft in office, the State may elect to try all of those offenses "as a single offense" and aggregate the value of "all [the] property and services involved in all of the offenses * * *." R.C. 2913.61(C)(3). If the State chooses to do so,

> it is not necessary to separately allege and prove each offense in the series. Rather, it is sufficient to allege and prove that the offender, within a given span of time, committed one or more theft offenses * * * in the offender's same employment [or] capacity * * *.

R.C. 2913.61(C)(4). The State then need only "prove the aggregate value of the property or services in order to meet the requisite statutory offense level * * *." *Id.*

**{¶56}** The State charged Mr. Infante with two counts of theft in office. The first count encompassed a six-month timeframe and charged him with a violation of R.C. 2921.41(A)(2). The second count encompassed a ten-year timeframe and charged him with a violation of R.C. 2921.41(A)(1). The State, therefore, elected to try Mr. Infante for an ongoing course of misconduct in two single offenses rather than seek convictions for many different instances of misconduct. *See* R.C. 2913.61(C)(3). To secure his conviction, the State was only required to prove that he, "within a given span of time, committed one or more theft offenses" in his capacity as mayor. R.C. 2913.61(C)(4). *See also* R.C. 2921.41(A) (forbidding a public official from committing *any theft offense* when either he uses his office to aid the theft or the property/service involved is owned by the political subdivision). So long as all twelve jurors all agreed that Mr. Infante, as mayor, committed a theft offense involving the City's property or services (R.C. 2921.42(A)(2)) and committed another theft offense by using his office (R.C. 2921.41(A)(1)), they need not have agreed on *which* theft offense he committed. *See Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 122-123; *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 187-188. *See also State v. Feagin*, 5th Dist. Richland No. 14CA11, 2014-Ohio-5133, ¶ 40. His two theft in office offenses presented

the jurors with single offenses that "[could have been] committed in more than one way * * *.'" *Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, at ¶ 49, quoting *Jones*, 96 Hawai'i at 170. Thus, the "jurors [did not] need [to] agree [on the] single way * * * [the theft] element [of each offense] [was] satisfied." *Gardner* at ¶ 38.

{¶57} In an alternative means case, a verdict will stand so long as "'a rational trier of fact could have found each [alternative] means of committing the crime proved beyond a reasonable doubt.'" *Gardner* at ¶ 49, quoting *Jones* at 170. Mr. Infante has not set forth any argument that the State failed to set forth sufficient evidence of the alternative means giving rise to his theft in office convictions. *See* App.R. 16(A)(7). He does cite as problematic the fact that the jury acquitted him of bribery, as several of his bribery counts related to his having accepted certain property or services for his personal benefit. Those acquittals are inapposite, however, as "an inconsistency in a verdict does not arise out of inconsistent responses to different counts * * *." *State v. Brown*, 12 Ohio St.3d 147 (1984), syllabus. Because Mr. Infante has not challenged the adequacy of the State's evidence on any of the alternative means giving rise to his theft in office convictions, this Court will not construct an argument on his behalf. *See State ex rel. DeWine*, 2017-Ohio-1509, at ¶ 27. As such, his fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 7

THE TRIAL COURT ERRED BY FAILING TO MERGE THE OFFENSES UNDERLYING THE CONVICTION OF ENGAGING IN PATTERN OF CORRUPT ACTIVITY, R.C. 2923.32(A)(1).

{¶58} In his seventh assignment of error, Mr. Infante argues that the trial court erred when it sentenced him on allied offenses of similar import. Specifically, he argues that each of his convictions should have merged with his conviction for engaging in a pattern of corrupt activity. As the State aptly notes, however, the Ohio Supreme Court has held that "a RICO offense does

not merge with its predicate offenses for purposes of sentencing." *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, ¶ 20. *Accord Birdsong*, 2014-Ohio-1353, at ¶ 57-71. Mr. Infante has failed to explain why *Miranda* does not apply herein. *See* App.R. 16(A)(7). Nor has he cited any case law sanctioning the merger of a corrupt activity conviction with its predicate offenses. *See id.* Because both the Supreme Court and the Eleventh District have rejected arguments identical to the one Mr. Infante sets forth herein, his seventh assignment of error is overruled.

III.

**{¶59}** Mr. Infante's assignments of error are overruled. The judgment of the Trumbull County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Trumbull, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, J.
CONCURS.

CARR, P. J.
CONCURRING.

{¶60} With respect to the majority's resolution of assignments of error one, three, four, five, and six I concur only in the majority's judgment, as I would resolve those assignments of error differently.

{¶61} As to assignment of error three, I would limit the analysis to the fact that Infante has not developed an argument demonstrating that the general tampering statute and another statute are irreconcilable on a particular issue. *See State v. Chandler*, 11th Dist. Trumbull No. 2015-T-033, 2016-Ohio-1017, ¶ 16-17. As to the fourth assignment of error, I concur that it is properly overruled; however, I do not view Infante's argument as challenging the amount of the figure the witness determined was profit but, instead, challenging the characterization of the sum as profit in general. With respect to the fifth assignment of error, I agree that Infante has not demonstrated a unanimity problem as to his theft in office convictions. As to Infante's sixth assignment of error, I agree that the trial court did not lack subject matter jurisdiction.

{¶62} Finally, as to Infante's conviction for engaging in a pattern of corrupt activity, I agree that it is based upon sufficient evidence. Here, there was evidence that Infante used ITAM, an organization owned by Infante and his wife, to conduct the gambling that resulted in two convictions for illegal gambling and two convictions for operating a gambling house. I would conclude that evidence alone was sufficient to support the verdict. Given that evidence, it is unnecessary to determine whether Infante alone could constitute an enterprise under the statute. Thus, I agree that Infante's conviction for engaging in a pattern of corrupt activity is based upon sufficient evidence.

(Teodosio, J., Carr, P. J., and Callahan, J., of the Ninth District Court of Appeals, sitting by assignment.)

APPEARANCES:

DAVID L. DOUGHTEN, Attorney at Law, for Appellant.

DAVE YOST, Attorney General, and DANIEL KASARIS, Assistant Attorney General, for Appellee.